Courtney Marie CHEEK, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–02–00453–CR.

Court of Appeals of Texas,
El Paso.

Oct. 30, 2003.

Sharon Letson Weathers, Midland, for Appellant.

Al W. Schorre, Jr., District Attorney of Midland County, Midland, for State.

Before Panel No. 1 SUSAN LARSEN, McCLURE, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

A jury convicted Courtney Marie Cheek of knowingly or intentionally causing bodily injury to her fourteen-month-old daughter, Alixandra. The court sentenced her to ten years in prison, suspended for ten years. On appeal, Cheek raises three points of error concerning a videotaped interview of her other daughter, three-year-old Britiny. Finding no error, we affirm.

### Factual and Procedural Background

At trial, Cheek claimed that her boyfriend, David Prater, was responsible for Alixandra's injuries. She testified that when she woke up on October 27, 2001, she found that Alixandra had gotten into her makeup and had covered herself in lipstick "from head to toe." Cheek decided to walk to a neighbor's house to ask if the neighbor could babysit that night. She

left Alixandra and Britiny with Prater, who said that he would wipe the lipstick off of Alixandra. After Cheek left, the only people in the house were Prater, Alixandra, and Britiny. Cheek testified that when she returned, she noticed that the lipstick had been wiped off, but that Alixandra's "cheeks were reddened [a]nd she looked like she had been squeezed." Cheek asked Prater what had happened, and he said that Alixandra would not hold still while he was trying to clean her face. He squeezed Cheek's face really hard to demonstrate what he had done to Alixandra. Prater left the house about five or ten minutes later.

After the red marks on Alixandra's face began to turn to bruises, Cheek called the sheriff's office. Some deputies arrived and escorted Cheek and Alixandra to a hospital. At the hospital, Cheek met Sergeant Terry Cowin of the Midland County Sheriff's Office. She told him that Prater caused Alixandra's injuries. Two days later, she gave Cowin a written statement in which she again claimed that Prater caused the injuries.

In December, Cheek gave Cowin an oral statement, admitting that she caused Alixandra's injuries. In January, she gave Cowin a written statement in which she admitted that after Prater left the house, she "lost [her] cool" with Alixandra while cleaning the lipstick off of her face. She stated that she held Alixandra's face too hard and knocked her down to the floor. Cheek testified at trial that her December and January statements were not true. She claimed that Cowin promised her that if she confessed she would only be charged with a misdemeanor, she would not have to spend any time in jail, and she would be able to keep her children. Cowin denied

making any promises or threats to obtain Cheek's confession.

Prater admitted that he watched the children while Cheek went to the neighbor's house. But he testified that he did not wipe the lipstick off of Alixandra's face, he did not cause her injuries, and she was not injured when he left the house.

On October 29, 2001, the same day that Cheek made her written statement blaming Prater for Alixandra's injuries and two days after those injuries occurred, Cowin took Cheek and Britiny to the Children's Advocacy Center. A forensic interviewer employed by the Center conducted a videotaped interview with Britiny. In the interview, Britiny indicated that Prater caused Alixandra's injuries. Cowin did not mention the videotaped interview in his reports. At trial, he claimed that he "flat forgot about it."

On the Friday before trial was to begin, Cheek's counsel learned about the videotape through discussions with her client.[1] At the commencement of trial the following Monday morning, defense counsel asked for a continuance to allow her to procure and view the tape and to make additional trial preparations based on the tape. The trial court delayed the voir dire until the afternoon and the commencement of testimony until the next morning. Later in the day, defense counsel filed a written motion seeking either a dismissal or a ten-day continuance because of the State's failure to disclose the videotape. The court denied the motion, but recessed court at 2 p.m. the next day to allow the defense some time to research issues raised by the videotape.

Because the defense indicated it might call Britiny as a witness, the judge interviewed her in the presence of the prosecu-

---

**1.** It is undisputed that the prosecutor did not know anything about the videotape until de- fense counsel told her about it.

tor and defense counsel to determine whether she was competent to testify. The judge determined that she was competent and that the defense could call her as a witness if it desired to do so. But the judge announced in open court, outside the presence of the jury, that Britiny unequivocally told him two or three times that her mother was responsible for Alixandra's injuries. The prosecutor had stated earlier that according to CPS, Britiny told two other people that Cheek caused Alixandra's injuries.

The next morning, defense counsel announced that she would not call Britiny as a witness. She asserted, however, that the videotape should be admitted. Counsel argued that the tape was admissible as a business record pursuant to Rule 803(6) of the Texas Rules of Evidence, that it was admissible as an extension of section 104.002 of the Texas Family Code and article 38.071 of the Texas Code of Criminal Procedure, and that Cheek would be denied due process if the tape were not admitted. Nevertheless, the court refused to admit the videotape.

The videotape is included in the record as part of the defense's bill of exceptions. The bill of exceptions also includes the testimony of Cowin and the forensic interviewer regarding the circumstances under which the interview was conducted and the videotape was made.[2]

## Inadmissibility of Videotaped Interview

In her first and second points of error, Cheek asserts that the trial court erred by refusing to admit the videotaped interview of Britiny. While acknowledging that the tape is hearsay, she argues that it was admissible under the business records exception to the hearsay rule. She also argues that exclusion of the videotape deprived her of her due process right to present a defense.

In reviewing a trial court's ruling on the admissibility of evidence, we must determine whether the court abused its discretion. *Willover v. State*, 70 S.W.3d 841, 845 (Tex.Crim.App.2002). This means that we must uphold the ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.* Furthermore, we must consider the trial court's ruling in light of what was before the trial court when the ruling was made. *Id.*

### Business Records Exception

Under the business records exception to the hearsay rule, a record kept in the course of a regularly conducted business activity is admissible if it was made at or near the time of the event recorded, by a person who had both personal knowledge of the event and a business duty to report the event. *See* TEX.R. EVID. 803(6); *Stapleton v. State*, 868 S.W.2d 781, 784–85 (Tex.Crim.App.1993); CATHY COCHRAN, TEXAS RULES OF EVIDENCE HANDBOOK 836–837 (5th ed.2003). If the person supplying the information con-

---

**2.** In the videotape, Britiny describes Alixandra as her "baby." She states that "David" "spanked" her and her baby on the "butt" with a "paddle." When asked if David spanked her baby on other places, such as her leg, arm, or face, Britiny eventually stated that David spanked her baby on the face while her mom was gone. She also demonstrated how he hit Alixandra's face with his hand. Britiny gave nonsensical answers to some of the interviewer's questions. For example, she answered some questions with a random series of numbers (such as 8,9,4,5,7,8) when the questions did not call for a numerical answer. Britiny stated that she saw blood and red "boogers" come out of Alixandra's nose. When asked what else she saw when she saw the boogers, she responded, "Dinosaur."

tained in a business record did not have a business duty to report the information, then the information is hearsay within hearsay or double hearsay. *Stapleton*, 868 S.W.2d at 784; Cochran at 841. Thus, although the business record itself will be admissible, the information contained within the record will be inadmissible unless it falls within another exception to the hearsay rule. *Stapleton*, 868 S.W.2d at 784; Cochran at 837–38, 841; *see also* Tex.R. Evid. 805 (providing that hearsay within hearsay is admissible if each part of the combined statements conforms with an exception to the hearsay rule).

Cheek argues that she proved up the videotape as a business record in her bill of exceptions. Relying on *Porter v. State*, 623 S.W.2d 374 (Tex.Crim.App.1981), she argues that the videotape was admissible. In *Porter*, the Court of Criminal Appeals upheld the admission of a tape recording and transcript of police radio transmissions. 623 S.W.2d at 382–85. The court held that the communications contained within the recording either fell within a hearsay exception or were not hearsay because they were not offered for the truth of the matters asserted. *Id.* at 385.

■ Unlike in *Porter*, Cheek offered the videotape for the truth of the matters stated therein by Britiny, and Cheek does not point to any hearsay exception that would make Britiny's statements admissible. It is clear that Britiny did not have a business duty to make the statements. Accordingly, the trial court did not abuse its discretion by refusing to admit the videotape under the business records exception.

### Due Process

Cheek also argues that the exclusion of the videotaped interview of Britiny deprived her of her due process right to defend herself. She relies on *Chambers v.* *Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

In *Chambers*, the combination of Mississippi's voucher and hearsay rules prevented the defendant from adequately presenting his defense that another man committed the crime. 410 U.S. at 294, 93 S.Ct. at 1045. The hearsay statements that Chambers sought to admit were declarations against penal interest. *Id.* at 299, 93 S.Ct. at 1048. Mississippi, however, did not treat such declarations as exceptions to the hearsay rule. *Id.* at 299, 93 S.Ct. at 1048.

The Court explained that hearsay statements are excluded from evidence because they lack conventional indicia of reliability. *Id.* at 298, 93 S.Ct. at 1047. The Court determined, however, that the declarations against penal interest at issue in the case were made under circumstances that assured their reliability. *Id.* at 300–01, 93 S.Ct. at 1048–49. Furthermore, the declarant was present in the courtroom and was under oath, and was thus available for cross-examination by the State. *Id.* at 301, 93 S.Ct. at 1049.

In concluding that Chambers was denied due process, the Court stated:

> Few rights are more fundamental than that of an accused to present witnesses in his own defense. In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore per-

suasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers' defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.

We conclude that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine [the declarant], denied him a trial in accord with traditional and fundamental standards of due process. In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial.

*Id.* at 302–03, 93 S.Ct. at 1049 (citations omitted).

Cheek argues that, as in *Chambers,* the videotaped interview was critical to her defense. She describes this case as a classic "Who done it?" because Prater and Cheek—the two people who had the opportunity to injure Alixandra—each claimed that he or she was not present when the injuries occurred. Britiny was the only witness and the only person who could corroborate Prater's or Cheek's version of events.

Cheek also argues, again as in *Chambers,* that the videotaped interview contains assurances of trustworthiness. For

this argument, she relies on article 38.071 of the Code of Criminal Procedure. Article 38.071 provides that a recording of an oral statement of a crime *victim* who is younger than thirteen and who is unavailable to testify in the presence of the defendant is admissible if the court determines that "the factual issues of identity or actual occurrence were fully and fairly inquired into in a detached manner by a neutral individual experienced in child abuse cases that seeks to find the truth of the matter." TEX.CODE CRIM. PROC. ANN. art. 38.071, §§ 1–2 (Vernon Supp.2003); *see also id.* § 5 (setting forth additional requirements for admissibility); *id.* § 8 (setting forth the factors a court should consider in determining whether the child is unavailable).[3]

Cheek points out that the interview of Britiny at the Children's Advocacy Center was conducted in the same way that an interview of a child victim is conducted. Moreover, because the interview was taped, the jury would be able to evaluate Britiny's demeanor and credibility, as well as the techniques used by the interviewer. Cheek argues that if an interview of a child victim conducted pursuant to article 38.071's standards is sufficiently reliable to overcome hearsay concerns, then an interview of a child witness conducted under the same standards should also defeat a hearsay objection. Cheek additionally argues that it is hypocritical for the State to oppose the admission of a videotaped interview of a child witness, when it is the State that typically seeks to admit such interviews of child victims.

In short, Cheek argues that "*Chambers* in its broadest sense stands for the proposition that the accused has the right to present credible evidence that someone

---

3. The Family Code contains a provision similar to article 38.071. *See* TEX. FAM.CODE ANN. § 104.002 (Vernon 2002). The Family Code provision, which applies to suits affecting the parent-child relationship, does not require the victim to be unavailable. *See id.*

else committed the crime." Accordingly, she requests that we extend article 38.071 to make the videotaped interview of Britiny admissible.

Although Cheek argues for a broad interpretation of *Chambers,* courts have steadfastly given it a narrow one. In *Chambers* itself, the Supreme Court cautioned against overreading the decision. *See Chambers,* 410 U.S. at 302–03, 93 S.Ct. at 1049. In a later decision, the Supreme Court essentially rejected Cheek's interpretation of *Chambers.* Noting that "*Chambers* specifically confined its holding to the 'facts and circumstances' presented in that case," the Court stated that "*Chambers* ... does not stand for the proposition that the defendant is denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence." *United States v. Scheffer,* 523 U.S. 303, 316, 118 S.Ct. 1261, 1268, 140 L.Ed.2d 413 (1998) (citation omitted). The Court elaborated as follows:

A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus " 'bow to accommodate other legitimate interests in the criminal trial process.' " As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

*Id.* at 308, 118 S.Ct. at 1264 (citations and footnote omitted); *see also Gacy v. Welborn,* 994 F.2d 305, 316 (7th Cir.1993) (stating that *Chambers* stands for the proposition that states must permit defendants to introduce reliable third-party confessions when direct evidence is unavailable).

Our own Court of Criminal Appeals has similarly refused to adopt a broad interpretation of *Chambers.* The court has noted that "[e]very rule of evidence works a hardship on some litigants part of the time, and it is easy to sympathize with the frustration of any party whose most promising strategy turns out to be objectionable under the law." *Fuller v. State,* 829 S.W.2d 191, 207 (Tex.Crim.App.1992), *overruled on other grounds by Riley v. State,* 889 S.W.2d 290 (Tex.Crim.App. 1994). Nevertheless, the court held that it is "not at liberty to relieve every such disappointment with an *ad hoc* suspension of the Rules." *Id.*

In *Fuller,* a capital murder case in which the defendant was sentenced to death, the defendant had conversations with another inmate in which he indicated that he did not commit the murder by himself. A deputy sheriff prepared a written report containing this information. The report was based on conversations she had overheard and on statements from other inmates who had overheard the conversations. The defendant attempted to question the deputy concerning her report, but the trial court excluded this evidence as hearsay. *Id.* at 207.

On appeal, the defendant suggested that the deputy's report was admissible under the hearsay exceptions for public records and reports, even though it did not fit within the literal terms of the exceptions. *Id.; see also* Tex.R. Evid. 803(8)(B), (C). He also argued that applying the hearsay rule in this situation, as in *Chambers,* would deprive him of due process. *Fuller,* 829 S.W.2d at 207. In evaluating these arguments, the Court of Criminal Appeals

distilled the holdings of *Chambers* and related cases into the following test:

> [R]ules for the admission and exclusion of evidence should be found offensive to notions of fundamental fairness embodied in the United States Constitution only when, (1) without a rational basis, they disadvantage the defendant more severely than they do the State or (2) arbitrarily exclude reliable defensive evidence without achieving a superior social benefit.

*Id.* at 208.

Applying the test to the case before it, the court noted that the hearsay exceptions cited by the defendant either applied equally to the defendant and the State or benefitted only the defendant. Therefore, the hearsay the defendant sought to admit would have been just as objectionable if offered by the State. *Id.*

The same is true in this case. Cheek suggests that article 38.071 benefits only the State and that the State is hypocritically trying to exclude a class of evidence that it frequently seeks to admit. On its face, however, article 38.071 expressly allows either the State or the defendant to admit videotaped oral statements of victims. *See* TEX.CODE CRIM. PROC. ANN. art. 38.071, § 5 (stating that, if certain requirements are met, the recording of an oral statement is admissible "[o]n the motion of the attorney representing the state or the attorney representing the defendant"). The business records exception also applies equally to the State and defendants. *See* TEX.R. EVID. 803(6).[4]

Turning to the second part of the test, the *Fuller* Court concluded that the hearsay rule did not arbitrarily exclude reliable defensive evidence without achieving a su-

perior social benefit. The court noted that the defendant elicited virtually the same information in the deputy's report by directly examining the inmate from whom the deputy obtained the information. *Fuller*, 829 S.W.2d at 208. The defendant contended, however, that the written report was more desirable to him than the inmate's testimony because the inmate gave testimony that was detrimental to the defendant during cross-examination. The court summarized and rejected the defendant's contention this way:

> Evidently, [the defendant] believes that the United States Constitution somehow prefers a written report to the live testimony of a witness whenever it might enable an accused to curtail the State's opportunity for effective cross examination.
>
> This proposition is, of course, untenable. It is inconceivable that the United States Constitution would sanction the suppression of relevant inculpatory evidence under the aegis of a doctrine whose very purpose is the removal of unreasonable obstacles to the truth-finding process.

*Id.*

■ We believe this reasoning applies in this case too. Although Cheek focuses her arguments on the fact that article 38.071 provides only for the admissibility of statements of child victims and not child witnesses, there is a more important reason why article 38.071 should not be extended to apply here. The statute states, "This article applies *only* to a hearing or proceeding in which the court determines that a child younger than 13 years of age *would be unavailable to testify in the pres-*

---

4. Cheek's attorney argued in the trial court that if Britiny had implicated Cheek in the videotaped interview, the State would be arguing for its admission into evidence. The judge responded, "Well, I don't know whether they would be or not. If they would, I don't think they would be any more successful...."

*ence of the defendant . . . .* " Tex.Code Crim. Proc. Ann. art. 38.071, § 1 (emphasis added). In this case, the court determined that Britiny was competent to testify and expressly stated that the defense could call her as a witness if it desired to do so. It is also clear from the record that Britiny's testimony may very well have been unfavorable to Cheek. But, as in *Fuller,* the fact that Britiny may have given testimony detrimental to Cheek does not entitle Cheek to have the videotaped interview admitted in lieu of calling her as a witness.

Article 38.071 provides a way for a jury to hear from a child when the child is unable to testify in court. By requiring that the child be unavailable to testify, the Legislature expressed a preference for live, in-court testimony. Under the circumstances of this case, we are unable to conclude that this preference is an arbitrary one.

The first and second points of error are overruled.

### Failure to Disclose Exculpatory Evidence

In her third point of error, Cheek argues that the trial court should have dismissed the case or granted a ten-day continuance when the videotaped interview was discovered.

■ To obtain a reversal because of the tardy disclosure of exculpatory evidence, the defendant must show that the evidence was material. *Ex parte Richardson,* 70 S.W.3d 865, 870 (Tex.Crim.App.2002); *Wilson v. State,* 7 S.W.3d 136, 146 (Tex. Crim.App.1999). In other words, the defendant must show a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed earlier. *Wilson,* 7 S.W.3d at 146; *see also Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.").

■ In determining whether the defendant has satisfied this burden, we may consider the adverse effect that nondisclosure had on the preparation or presentation of the defendant's case. *See United States v. Bagley,* 473 U.S. 667, 683, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985); *Thomas v. State,* 841 S.W.2d 399, 405 (Tex. Crim.App.1992). We must consider the totality of the circumstances and be mindful of the difficulty of reconstructing the course that the defense and the trial would have taken if the evidence had been timely disclosed. *See Bagley,* 473 U.S. at 683, 105 S.Ct. at 3384; *Thomas,* 841 S.W.2d at 405.

■ Cheek acknowledges that the trial court delayed the trial for a few hours to allow the defense to consider the issues raised by the videotape, but she argues that this time was insufficient. She asserts that she needed more time to research the admissibility of the videotape and to investigate whether the videotape could lead to additional evidence.

These assertions fall far short of establishing a reasonable probability that the result of the trial would have been different. Regarding the assertion that more time was needed to research the admissibility of the videotape, we note that six months elapsed between the trial and the filing of Cheek's appellant's brief. Yet Cheek does not point to any ground for admitting the videotape other than the grounds she raised at trial. Regarding the assertion that more time was needed to investigate whether the videotape would lead to additional evidence, Cheek does not

point to anywhere in the record to show what evidence would have been admitted if there had been additional time to investigate, nor does she give us any reason to believe that additional evidence exists. *See Wilson,* 7 S.W.3d at 146 (refusing to reverse in a tardy disclosure case because the defendant failed to point to anywhere in the record to explain what witnesses might have been called if there had been additional time to investigate and failed to show any reason to believe that additional witnesses exist); *Hampton v. State,* 106 S.W.3d 846, 853–54 (Tex.App.-El Paso 2003, no pet. h.) (refusing to reverse in a tardy disclosure case because whether the late-disclosed information would have assisted the defense was speculative); *Nel-*

*loms v. State,* 63 S.W.3d 887, 892 (Tex. App.-Fort Worth 2001, pet. ref'd) (refusing to reverse in a tardy disclosure case because the defendant's assertions of prejudice lacked evidentiary support).

The third point of error is overruled.

### Conclusion

For the reasons stated herein, the judgment of the trial court is affirmed.