Affirmed and Memorandum Opinion filed October 23, 2008








Affirmed and Memorandum Opinion filed October 23, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00422-CR

_______________

 

ALAN JULIAN HARPER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 1070541

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

Appellant, Alan Julian Harper,
challenges his conviction following a bench trial for causing serious bodily
injury to a child with the use of a deadly weapon.  The trial court assessed
punishment as confinement for 65 years.  Appellant contends that (1) the
evidence was legally insufficient to establish that appellant caused serious
bodily injury to complainant=s chest and abdomen; (2) the evidence was factually
insufficient to establish that appellant was guilty of injury to a child; (3)
the trial court denied his constitutional right to present a defense; and (4)
the trial court erred in excluding a videotaped statement of the complainant=s mother.  We affirm.








Background

Complainant was the two-year-old son
of C=Neshia Traylor.  Traylor also had two
other children, a son who was five years old at the time of complainant=s injury and a daughter who was one
year old.  Traylor and her three children lived with Traylor=s mother, Cecelia Traylor Boudreaux.

Traylor and her children moved out of
Boudreaux=s home and into appellant=s Houston residence in February 2004.  Appellant and Traylor
had known each other for about eight years and had begun dating in August
2003.  They married on March 28, 2004.  While Traylor resided with him, appellant
typically cared for Traylor=s three children during the day while Traylor was at work. 

On April 3, 2004, complainant spent
part of the day with Boudreaux.  Boudreaux testified that complainant did not
appear to have any injuries on that date.  On April 4, 2004, complainant
received an arm injury while he was in appellant=s care at appellant=s residence.  Traylor bandaged
complainant=s arm and asked appellant about the injury.  Appellant said that
complainant probably injured himself somewhere around the house, but offered no
further explanation.

On April 5, 2004, Traylor gave
complainant medicine for what she believed to be a chest cold.  Complainant had
no appetite and appeared to have a fever.  About 11:00 p.m., Boudreaux picked
up complainant and his brother to spend the night at her home.  Boudreaux asked
complainant about his arm injury but he would not tell her how he had been
injured.  Boudreaux also noticed complainant=s fever.  Complainant slept on
Boudreaux=s sofa with her.  Complainant was restless and did not sleep well that
night.








Complainant still had a fever and
refused to eat anything on the morning of April 6, 2004.  Boudreaux took
complainant=s brother to school and returned complainant to appellant=s residence.  Traylor had left for
work already and appellant was the only adult at the residence.  Complainant
began crying and screaming as Boudreaux dropped him off with appellant.  It was
not unusual for complainant to act this way when Boudreaux returned him to
appellant. 

When Traylor returned home from work
the afternoon of April 6, 2004, complainant and his siblings were together in
their bedroom and complainant was lying on the floor in front of the television. 
Traylor told police she was not sure if complainant=s eyes were open or closed at the
time.  Traylor testified at trial that complainant=s eyes were closed; she thought he was
sleeping and did not wish to disturb him. 

Shortly after Traylor got home from
work, appellant left the residence for 20 or 30 minutes to get cigarettes and
marijuana.  Upon appellant=s return to the residence, he and Traylor watched television
and talked. 

Traylor eventually asked appellant to
gather the children for dinner.  Appellant testified that he went to the
children=s room and attempted to wake
complainant, who was limp and unresponsive.  Appellant yelled for Traylor to
come quickly and eventually carried complainant to her.  Complainant was limp
in appellant=s arms and cold to the touch when Traylor checked him for a pulse. 
Traylor told appellant to call 9-1-1, which he did, and she then began
performing CPR on complainant.  Traylor continued performing CPR until
emergency medical personnel arrived and took over.

Emergency medical personnel noted at
the scene that complainant was pale, cool to the touch, not breathing, and had
no pulse.  Complainant had no obvious injuries and there was no blood in the
area where he was found.  Emergency medical personnel were told that
complainant was found unconscious and unresponsive in front of the television. 
These personnel restarted complainant=s heart, but complainant could not
breathe on his own.  

Complainant was transported to the
hospital; Traylor and appellant followed.  During this time, Traylor asked
appellant what had happened to complainant.  Appellant replied that nothing
happened and he could not explain how complainant had been injured.  Traylor
testified that appellant stated, AI promise nothing happened.  If
something happened I would tell you . . . . I love you.  You know I wouldn=t do anything to hurt the kids.@








Complainant was comatose and
brain-dead upon arriving at the hospital.  Emergency room personnel noticed
injuries to complainant=s head that were consistent with child abuse.  Hospital
personnel and police questioned Traylor and appellant both together and
individually about child abuse.  Each denied abusing complainant.  Appellant
testified that Traylor told him at the hospital she had Awhipped@ complainant during appellant=s 20-30 minute absence on April 6,
2004, but had not hurt him.  Appellant testified that he withheld this
information from police to keep Traylor from being arrested.  Traylor testified
at trial that she had no contact with complainant during appellant=s absence on April 6. 

Traylor=s other children were examined at the
hospital.  Traylor=s oldest son had no major injuries.  Traylor=s daughter had a lacerated liver, a
skull fracture, and a broken leg.  Appellant denied causing these injuries. 
Appellant and Traylor were prohibited from having any further contact with
complainant and told to leave the hospital.  Traylor gave voluntary consent to
search the family=s residence.  The search revealed no blood splatter and no
weapons or other items police believed would have caused complainant=s injuries.

An autopsy determined that
complainant had suffered three fractured ribs on the left rear side of his
body.  Some fractures showed evidence of previously healed or healing
fractures.  There also was hemorrhaging around many of the rib fractures.  The
medical examiner indicated that these fractures likely resulted from
complainant being grabbed and compressed or twisted.  According to the medical
examiner, the type of rib fractures present were not commonly seen in children
and complainant had more injuries than one would expect for a normal
two-year-old.  These injuries included bruises and scars on complainant=s head, neck, and back.  Complainant
also had hemorrhaging completely around the bone on one arm, which would be
consistent with someone squeezing and twisting the arm.  These injuries were
not the cause of complainant=s death.  When asked if he would characterize complainant=s rib fractures as serious bodily
injury, the medical examiner replied, ANot in and of themselves.@ 








The autopsy also revealed that
complainant=s liver had been torn nearly in two, resulting in significant internal
bleeding.  The medical examiner testified that bleeding from the liver injury
would have caused loss of appetite and impaired the functioning of complainant=s intestines.  He further testified
that an impact forceful enough to compress the front part of complainant=s abdomen all the way to his back
would be required to cause such an injury.  The medical examiner testified
that, based on the amount of internal bleeding, this injury occurred Aprobably a few hours@ before complainant was brought to
the hospital.  This injury was not the cause of complainant=s death.  While acknowledging that
the liver was still partially functioning, the medical examiner testified that
this injury met the legal definition of Aserious bodily injury.@  The injuries to complainant=s chest and abdomen likely were too
severe to be caused by improper performance of CPR.

The autopsy also revealed that
complainant had brain injuries, many of which were not evident from external
observation.  The medical examiner testified that these injuries resulted from
impact from a blunt object and caused complainant=s death.  The medical examiner opined
that some of complainant=s brain injuries would have caused lethargy or
disorientation, but also could have knocked him unconscious. 

Complainant=s treating neurosurgeon, Dr. Dauser,
testified that complainant=s most severe head injury would have rendered him unconscious
immediately.  Dr. Dauser agreed with the medical examiner=s assessment that impact from a blunt
object caused complainant=s head injuries.  Dr. Dauser testified that complainant=s most severe head injury required an
extremely forceful hit, similar to what one would see in a serious car
accident.  Dr. Dauser opined that a fall would necessarily be from at least a one-story
building to produce such an injury, and that the injury almost certainly
occurred within 12 hours of complainant=s arrival at the hospital.








After the autopsy, appellant was
charged in an eight-paragraph indictment with causing serious bodily injury to
a child with the use of a deadly weapon.  Paragraphs one and two of the
indictment alleged that appellant caused blunt force trauma to complainant=s head by use of a deadly weapon;
paragraphs three and four alleged that appellant caused blunt force trauma to
complainant=s neck by use of a deadly weapon; paragraphs five and six alleged that
appellant caused blunt force trauma to complainant=s chest by use of a deadly weapon;
and paragraphs seven and eight alleged that appellant caused blunt force trauma
to complainant=s abdomen by use of a deadly weapon.  

At the close of the State=s case-in-chief during trial,
appellant moved for a directed verdict on each paragraph of the indictment. 
The trial court granted this motion with respect to the neck injuries addressed
in paragraphs three and four, and denied the motion as to the remaining
paragraphs.  At the conclusion of the guilt-innocence stage of the trial, the
trial court found appellant guilty of the charges alleged in paragraphs one,
two, five, six, seven, and eight of the indictment.

Analysis

Appellant challenges legal
sufficiency of the evidence supporting the trial court=s findings that appellant caused
serious bodily injury to complainant=s chest and abdomen.  Appellant does
not challenge the finding that complainant suffered serious bodily injury to
his head.  Appellant also challenges factual sufficiency of the evidence
supporting the trial court=s finding that appellant was guilty of injury to a child. 
Additionally, appellant challenges the exclusion of videotape evidence
containing a police interview of Traylor in which she made incriminating
statements against appellant.  We address each challenge in turn.

I.          Legal
Sufficiency of Evidence Establishing That Appellant Caused Serious Bodily
Injury to Complainant=s Chest and Abdomen.  








In reviewing legal sufficiency of the
evidence, an appellate court will examine the evidence in the light most
favorable to the State to determine whether any rational finder of fact could
have found the essential elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319 (1979); Dewberry v. State, 4 S.W.3d
735, 740 (Tex. Crim. App. 1999).  When reviewing legal sufficiency of the
evidence, the court does not sit as a thirteenth juror and may not re-evaluate
the weight and credibility of the record evidence or substitute its judgment
for that of the fact finder.  Dewberry, 4 S.W.3d at 740.

Reconciliation of conflicts in the
evidence is within the exclusive province of the fact finder.  See Mosley v.
State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998) (en banc).  The appellate
court=s duty is not to reweigh the
evidence, but to serve as a final due process safeguard ensuring only the
rationality of the fact finder.  See Williams v. State, 937 S.W.2d 479,
483 (Tex. Crim. App. 1996).  An appellate court faced with a record of facts
that supports conflicting inferences must presume _ even if not obvious from the record _ that the finder of fact resolved any
such conflicts in favor of the State, and must defer to that resolution.  Jackson,
443 U.S. at 326.

Serious bodily injury is defined as
an injury that Acreates a substantial risk of death or that causes death,
serious permanent disfigurement, or protracted loss or impairment of the
function of any bodily member or organ.@  Tex. Penal Code Ann. _ 1.07(a)(46) (Vernon Supp. 2008). 
The Court of Criminal Appeals has determined that Aprotracted@ loss or impairment is synonymous
with injury that is continuing, lingering, long-continued, ongoing, or
prolonged.  See Moore v. State, 739 S.W.2d 347, 352 (Tex. Crim. App.
1987).  When considering whether serious bodily injury exists, the relevant
question is the extent of the injury as inflicted _ not after medical treatment has been
received.  Stuhler v. State, 218 S.W.3d 706, 715 (Tex. Crim. App.
2007).  Whether the facts in a particular case support a finding that an injury
is a serious bodily injury must be determined on a case-by-case basis.  Rogers
v. State, Nos. 01-02-01024-CR, 01-02-01025-CR, 2004 WL 253265, at *4 (Tex.
App.BHouston [1st Dist.] Feb. 12, 2004,
pet. ref=d) (mem. op., not designated for
publication).








As noted above, appellant does not
challenge the trial court=s finding that complainant suffered serious bodily injury to
his head.  If there is sufficient evidence to prove one theory of the
commission of the offense charged, a reviewing court need not consider
sufficiency relating to other theories.  Vasquez v. State, 665 S.W.2d
484, 487 (Tex. Crim. App. 1984) (en banc), overruled on other grounds by
Gonzales v. State, 723 S.W.2d 746 (Tex. Crim. App. 1987) (en banc); see
also Lawton v. State, 913 S.W.2d 542, 551 (Tex. Crim. App. 1995) (en banc)
(where State pleads alternative theories of same offense, it need not prove
guilt under all theories alleged), overruled on other grounds by Mosley v.
State, 983 S.W.2d 249 (Tex. Crim. App. 1998) (en banc); Callis v. State,
No. 14-04-01091-CR, 2006 WL 771897, at *3 (Tex. App.BHouston [14th Dist.] Mar. 28, 2006,
no pet.) (mem. op., not designated for publication) (where evidence is
sufficient to prove one of two ways of committing offense, appellate court need
not consider sufficiency of evidence to prove alternative theory).

The unchallenged head injury is
sufficient to establish that complainant suffered serious bodily injury.  The
medical examiner testified that complainant died from brain injuries caused by impact
from a blunt object.  Dr. Dauser agreed with the medical examiner=s assessment, and testified that
complainant=s head injury was caused by an impact similar to what one would see in a
serious car accident.  Dr. Dauser opined that complainant=s head injury would have required a
fall from at least a one-story building.  This evidence is legally sufficient
to support a finding of serious bodily injury to complainant=s head.    

Additionally, there is legally
sufficient evidence to establish that complainant suffered serious bodily
injury to his abdomen.  Autopsy results showed that complainant=s liver was nearly torn in half and
had filled his abdominal cavity with enough blood to impair the functioning of
other vital organs.  The force required to cause such an injury pushed the
front part of complainant=s abdomen all the way to his back.  The medical examiner=s testimony explicitly characterized
complainant=s abdominal injury as Aserious bodily injury.@  Based on this testimony, a rational
fact finder could have found complainant=s abdominal injury to be a Aserious bodily injury@ beyond a reasonable doubt.[1]

We overrule appellant=s issue regarding legal sufficiency
of the evidence.








II.        Factual
Sufficiency of
Evidence Establishing That Appellant Was Guilty of Injury to a Child       

Appellant next challenges factual
sufficiency of the evidence establishing that appellant was the individual who
injured complainant.  The record shows that the parties presented competing
theories regarding the origin of complainant=s injuries.  The State asserted that
appellant caused the injuries while complainant=s mother was at work.  Appellant
argued that complainant=s mother inflicted the injuries during appellant=s 20-30 minute absence from the home
on April 6, 2004.  Each side presented circumstantial evidence and in-court
testimony to support its respective theory.

When conducting a factual sufficiency
review, an appellate court must determine (1) whether the evidence introduced
to support the verdict is Aso weak@ that the fact finder=s verdict seems Aclearly wrong and manifestly unjust,@ and (2) whether, considering
conflicting evidence, the fact finder=s verdict is nevertheless against the
great weight and preponderance of the evidence.  Watson v. State, 204
S.W.3d 404, 414-15 (Tex. Crim. App. 2006).  In the case of rejection of a
defense by the finder of fact, an appellate court reviews all of the evidence
in a neutral light and asks whether the State=s evidence taken alone is too weak to
support the finding and whether the proof of guilt is against the great weight
and preponderance of the evidence.  Zuliani v. State, 97 S.W.3d 589, 595
(Tex. Crim. App. 2003) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000)).








In order to declare that an
evidentiary conflict justifies a new trial, an appellate court must rely on
some objective basis in the record that the great weight and preponderance of
the evidence contradicts the jury=s verdict.  See Lancon v. State,
253 S.W.3d 699, 706-07 (Tex. Crim. App. 2008) (citing Watson, 204 S.W.3d
at 417).  An appellate court should not substantially intrude upon the fact
finder=s role as the sole judge of the
weight and credibility of witness testimony.  Vasquez v. State, 67
S.W.3d 229, 236 (Tex. Crim. App. 2002).  Due deference must be given to the
fact finder=s determinations concerning the weight and credibility of the evidence,
and reversal of those determinations is only appropriate to prevent the
occurrence of a manifest injustice.  Martinez v. State, 129 S.W.3d 101,
106 (Tex. Crim. App. 2004) (citing Swearingen v. State, 101 S.W.3d 89,
97 (Tex. Crim. App. 2003)).

Where there are reasonably equal
competing theories of causation, it is the province of the finder of fact, not
the reviewing court, to accept or reject any of those theories.  See Goodman
v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001).  In cases based upon
circumstantial evidence, it is not required that all facts point to a defendant=s guilt; it is sufficient if the
combined and cumulative force of all of the incriminating circumstances
warrants the conclusion of guilt.  See Courson v. State, 160 S.W.3d 125,
128 (Tex. App.BFort Worth 2005, no pet.) (citing Johnson v. State, 871 S.W.2d
183, 186 (Tex. Crim. App. 1993) (en banc)).








Appellant highlights the following
evidence in support of his contention that Traylor caused serious bodily injury
to complainant: (1) inconsistencies between Traylor=s testimony and other evidence,
including her prior statements;[2] (2) appellant=s testimony that Traylor admitted Awhipping@ complainant while appellant was
absent on April 6, 2004; (3) appellant=s testimony that he attempted to
awaken complainant and thought complainant was asleep when he found complainant
unconscious and unresponsive; (4) appellant=s testimony that he did not injure
complainant and did not know how complainant got injured; (5) the absence of
blood splatter or instruments that could have caused complainant=s injuries in appellant=s residence; (6) the inability of the
State=s medical experts to identify
precisely what instrument(s) caused complainant=s injuries or exactly when he was
injured; (7) the testimony of defense witnesses tending to inculpate Traylor
and exculpate appellant;[3] and (8) Dr.
Dauser=s testimony that complainant=s head injury likely occurred within
an hour of complainant=s arrival at the hospital, which could have been within the
20-30 minute window when appellant was absent.

However, the record also contains
ample evidence supporting a finding that appellant caused serious bodily injury
to complainant: (1) the extensive nature of complainant=s injuries, which entitled the fact
finder to conclude that they could not have been inflicted in only 20-30
minutes; (2) appellant=s status as the only adult with complainant from the time
Boudreaux dropped complainant off on April 6, 2004, until Traylor returned home
from work, a period of approximately eight to nine hours; (3) complainant=s arm injury suffered while in
appellant=s care on April 4, 2004, and appellant=s lack of an explanation for the
injury; (4) appellant=s lack of any explanation for complainant=s condition on April 6, 2004, despite
being solely responsible for complainant=s care for eight or nine hours; (5)
the brevity of the afternoon period during which complainant was left in
Traylor=s exclusive care; (6) appellant=s admission that he had given an
alias instead of his real name during a prior police investigation, thereby
raising doubts about his credibility; and (7) appellant=s lack of any explanation for the
injuries suffered by complainant or by Traylor=s daughter during the period in which
appellant was the children=s primary caregiver.








The facts here parallel
Kemmerer v. State, 113 S.W.3d 513, 515-16 (Tex. App.BHouston [1st
Dist.] 2003, pet. ref=d).  The appellant in Kemmerer was
the complainant=s primary caregiver during the day and was
with the complainant during nearly the entire time during which complainant
could have been injured.  Id. at 514-15.  The State put forth medical
evidence that the complainant would have become unconscious immediately after
having sustained her injuries, and that those extensive injuries must have been
caused by a forceful blow or severe shaking, rather than a mere fall from a
sofa.  Id. at 515.  The court characterized this as circumstantial
evidence that the appellant inflicted the complainant=s injuries.  Id. 
The appellant offered evidence that the complainant had briefly been left alone
in her older brother=s care before being dropped off with the
appellant.  Id. at 515-16.  The court held that the jury was free to
believe the State=s evidence and discount any contrary
evidence, and that such contrary evidence did not render the State=s evidence
factually insufficient.  Id. at 516.

The same conclusion applies here. 
Choosing between the two theories put forth in this case was within the
exclusive province of the trial judge as the finder of fact.  See Goodman,
66 S.W.3d at 287 (even if appellant offers plausible competing theory, fact
finder may choose not to believe it).  The evidence in this case is factually
sufficient to justify the trial court=s finding that appellant inflicted
complainant=s injuries.  The trial court=s finding is neither Aclearly wrong and manifestly unjust@ nor against the great weight and
preponderance of the evidence.  

We overrule appellant=s issue regarding factual sufficiency
of the evidence.

III.       Constitutional
Right to Present a Defense

Appellant challenges the trial court=s exclusion of a videotaped statement
given by Traylor to police.  Appellant argues that the exclusion of this
evidence violated his constitutional right to present a complete defense.  See
U.S. Const. amend. VI.  The trial court excluded the videotape on hearsay
grounds, but did allow it to be used for impeachment purposes or to refresh
Traylor=s memory.  After the court=s evidentiary ruling, appellant chose
not to use the videotape at all.  Appellant=s brief offers no explanation for the
decision not to use the videotape for the allowed purposes.








There is no constitutional right for
a defendant to present all favorable evidence.  Potier v. State, 68
S.W.3d 657, 659 (Tex. Crim. App. 2002) (citing United States v. Scheffer,
523 U.S. 303, 316 (1998)).  A criminal defendant has a fundamental right to
present evidence of a defense so long as that evidence is relevant and not
excluded by an established evidentiary rule.  Miller v. State, 36 S.W.3d
503, 507 (Tex. Crim. App. 2001).  A defendant does not have an unfettered right
to offer evidence that is incompetent, privileged, or otherwise inadmissible
under the standard rules of evidence.  Montana v. Egelhoff, 518 U.S. 37,
42 (1996).

A criminal defendant is rarely
prevented from exercising his fundamental constitutional right to present a
meaningful defense by virtue of a trial court=s evidentiary ruling.  Ray v.
State, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005) (citing Potier, 68
S.W.3d at 663).  A criminal defendant bears a heavy burden to prove that his
constitutional rights have been violated by the exclusion of a particular piece
of evidence.  See Egelhoff, 518 U.S. at 43.   

A defendant=s constitutional right to present a
defense is abridged only by evidentiary rules that infringe upon a weighty
interest of the accused and which are arbitrary and disproportionate to the
purposes they are designed to serve.  Holmes v. S. Carolina, 547 U.S.
319, 324-25 (2006); Conerly v. State, No. 14-07-00542-CR, 2008 WL
2841678, at *3 (Tex. App.BHouston [14th Dist.] July 24, 2008, no pet.) (mem. op., not
designated for publication).  Evidentiary rules offend the United States
Constitution only when they (1) disadvantage the defendant more severely than
they do the State without any rational basis for doing so, or (2) arbitrarily
exclude reliable defensive evidence without achieving a superior social
benefit.  Cheek v. State, 119 S.W.3d 475, 482 (Tex. App.BEl Paso 2003, no pet.) (citing Fuller
v. State, 829 S.W.2d 191, 208 (Tex. Crim. App. 1992) (en banc), overruled
on other grounds by Castillo v. State, 913 S.W.2d 529 (Tex. Crim. App.
1995) (en banc)).








The dispute here focuses on the
hearsay rule, an established evidentiary rule trial courts may invoke to
exclude otherwise relevant and admissible evidence.  See Tex. R. Evid.
802.  The rule is applied equally to the State and to the appellant, and is not
arbitrary in its exclusion of defense evidence; rather, the rule exists to
ensure the reliability of the statements introduced into evidence by both
sides.  See Green v. State, 876 S.W.2d 226 (Tex. App.BBeaumont 1994, no pet.).  Excluding
as hearsay the videotaped statement complainant=s mother gave to police does not rise
to the level of a constitutional violation.  See Ray, 178 S.W.3d at
835-36 (exclusion of direct witness testimony supporting defense did not rise
to level of constitutional violation); Sauceda v. State, 162 S.W.3d 591,
594-95 (Tex. App.BHouston [14th Dist.] 2005, pet. ref=d) (exclusion of sole defense witness=s testimony does not violate
constitutional right to present a complete defense when defendant has
opportunity to impeach adverse witnesses through cross-examination); Cheek,
119 S.W.3d at 479-83 (exclusion of videotaped interview of child witness did
not deprive defendant of constitutional right to defend herself). 

We overrule appellant=s issue regarding violation of his
constitutional right to present a defense.[4]

IV.       Non-Constitutional
Error in Exclusion of Videotaped Statement of Complainant=s Mother

In addition to appellant=s constitutional argument, appellant
also challenges the trial court=s exclusion of Traylor=s videotaped statement to police on
non-constitutional grounds.  Appellant argues that the exclusion of this
evidence constituted reversible error as a violation of his substantial rights.

We review a trial court=s ruling on admission of evidence for
abuse of discretion.  Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim.
App. 2002).  Again, the dispute here focuses on hearsay grounds for exclusion.








Hearsay is a statement, other than
one made by the declarant while testifying at trial, that is offered to prove
the truth of the matter asserted, and is inadmissible unless a statute or rule
of exception applies.  Tex. R. Evid. 801(d), 802.  A statement not offered to
prove the truth of the matter asserted is not hearsay.  Dinkins v. State,
894 S.W.2d 330, 347 (Tex. Crim. App. 1995).  Where there is an inescapable
conclusion that evidence is being offered to prove statements made out of
court, one may not circumvent the hearsay rules through artful tactics designed
to elicit hearsay indirectly.  Schaffer v. State, 777 S.W.2d 111, 114
(Tex. Crim. App. 1989).  Otherwise inadmissible hearsay may be admitted to
establish a declarant=s then-existing state of mind or emotion.  Tex. R. Evid.
803(3).  Otherwise inadmissible hearsay may not be admitted to
establish why the declarant had that particular state of mind or
emotion.  Menefee v. State, 211 S.W.3d 893, 906 (Tex. App.BTexarkana 2006, pet. ref=d) (statements of complainant that
defendant had been partying and smoking marijuana are beyond scope of Rule
803(3)); see also Buhl v. State, 960 S.W.2d 927, 933 (Tex. App.BWaco 1998, pet. ref=d) (distinguishing between statements
showing mental or emotional condition of fear and such statements being offered
to prove truth that complainant had pulled guns on defendant).

A declarant=s statement that is not limited to
his state of mind, but explains the reason for or implies that state of mind,
is not admissible under Rule 803(3).  See Rogers v. State, 183 S.W.3d
853, 860 (Tex. App.BTyler 2005, no pet.) (citing Barnum v. State, 7 S.W.3d
782, 790 (Tex. App.BAmarillo 1999, pet. ref=d)).  A party may not use a declarant=s purported mental condition to
introduce evidence that events allegedly occurred or conditions allegedly
existed to produce the supposed mental condition.  Vann v. State, 853
S.W.2d 243, 250 (Tex. App.BCorpus Christi 1993, pet. ref=d) (citing Gibbs v. State, 819
S.W.2d 821, 837 (Tex. Crim. App. 1991)).








As already noted, the trial court
excluded the videotape in question on hearsay grounds.  Appellant challenges
this ruling on two alternative theories: (1) the videotape was not hearsay
because it was not offered to show the truth of the actual statements made
therein; and (2) the videotape was admissible under Rule 803(3) to show Traylor=s mother=s state of mind.  Appellant=s stated purpose in offering the
videotape was to show the circumstances in which Traylor=s statements about appellant changed from
being supportive of him to being accusatory and inculpative of him.  Appellant=s theory is that police acted
improperly or suggestively during the videotaped interview in a successful
effort to change Traylor=s attitude toward appellant from positive to negative so that
she would implicate him in the abuse of complainant.

Evidence offered under a similar
theory has been analyzed in terms of whether the evidence satisfies a hearsay
exception.  See Menefee, 211 S.W.3d at 906; Rogers, 183 S.W.3d at
860; Buhl, 960 S.W.2d at 933; Vann, 853 S.W.2d at 250.  Such an
analysis unavoidably starts with the proposition that the evidence at issue is
hearsay in the first place.  See also Cheek, 119 S.W.3d at 478
(videotaped interview of complainant=s sibling conceded by defense counsel
to be hearsay).

Appellant analogizes to authority
that it is not hearsay for a police officer to testify to events or statements
which lead an investigation in a certain direction.  See Jones v. State,
843 S.W.2d 487, 499 (Tex. Crim. App. 1992), abrogated on other grounds by
Maxwell v. State, 48 S.W.3d 196 (Tex. Crim. App. 2001); McCreary v.
State, 194 S.W.3d 517, 521 (Tex. App.BHouston [1st Dist.] 2006, no pet.); Davis
v. State, 169 S.W.3d 673, 675-76 (Tex. App.BFort Worth 2005, no pet.); see
also Dinkins, 894 S.W.2d at 347 (appointment book and application form with
defendant=s name admissible to show how defendant became a suspect, not for truth
of matter asserted).








Appellant reads this line of cases
too broadly and his reliance on these cases is misplaced.  These cases merely
hold that statements offered to explain how a defendant originally became a
suspect may qualify as non-hearsay when not offered for the truth of the matter
asserted.  See Davis, 169 S.W.3d at 675.  Such testimony may assist a
jury=s understanding of events by
providing context for the actions of police.  Id. at 676.  Appellant
attempts to extrapolate this narrow principle so that statements of the police
during an interview of one criminal suspect to elicit information against a
fellow suspect are not hearsay.  Such an extrapolation would allow exactly the
type of circumvention Schaffer warns against, and would eviscerate the
hearsay rule.  Schaffer, 777 S.W.2d at 114.  We decline to permit such
circumvention.  The videotape at issue here contains hearsay.  The evidence
does not fit the narrow Davis exception to explain how a person
originally became a suspect because both appellant and Traylor already were
suspects when Traylor made the videotaped statements.

Having determined that the trial
court properly characterized the videotape as hearsay, we must determine if the
trial court abused its discretion in ruling that the videotape was inadmissible
under Rule 803(3).  We hold that it did not.  A criminal defendant may not use
Rule 803(3) to introduce hearsay evidence purporting to show the reason why a
declarant possessed a particular state of mind or emotion.  See Menefee,
211 S.W.3d at 906; Rogers, 183 S.W.3d at 860; Buhl, 960 S.W.2d at
933; Vann, 853 S.W.2d at 250.

Additionally, we are to disregard
non-constitutional errors that do not affect substantial rights.  Tex. R. App.
P. 44.2(b).  Such rights are affected when the error had a substantial and
injurious effect in determining the verdict.  King v. State, 953 S.W.2d
266, 271 (Tex. Crim. App. 1997).  In determining harm, we must consider the
entire record.  Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998).  

The record in this case reflects that
(1) appellant was permitted to use the videotape in question for purposes of
impeachment and of refreshing recollection; (2) appellant chose not to use the
videotape for any purpose; and (3) defense counsel extensively cross-examined
Traylor about the videotaped interview in question.  As previously noted,
appellant offers no explanation for the conscious decision not to use the
videotape for any of the permitted purposes.  Also, appellant cites no specific
information from the videotape that he was unable to elicit through vigorous
cross-examination of Traylor _ which he did pursue _ or by subpoenaing the testimony of the questioning
officer _ which he did not pursue.  Under the
circumstances of this case, even if appellant had proven error by the trial
court in excluding the videotape, such error would have been harmless.  See
King, 953 S.W.2d at 271; see also Sauceda, 162 S.W.3d at 597-98. 








We overrule appellant=s issue regarding exclusion of the
videotaped statement of complainant=s mother as violative of appellant=s substantial rights.   

Conclusion

The trial court=s judgment is affirmed.

 

/s/        William J. Boyce

Justice

 

Judgment rendered and Memorandum
Opinion filed October 23, 2008.

Panel consists of Justices Yates,
Seymore, and Boyce.

Do not publish C Tex.
R. App. P. 47.2(b).

 

 









[1]           In light of this disposition, we need not
address whether the evidence is sufficient to establish that complainant
suffered serious bodily injury to his chest.





[2]           Traylor testified during trial that
complainant=s eyes were closed when she looked in on him on the
afternoon of April 6, 2004, but she told police at the time that she was unsure
whether complainant=s eyes were open or closed.  Traylor also made
comments to investigators early in the investigation that appellant was a good
parent and that she was the disciplinarian in the family.  Traylor also
testified at trial that she and appellant were transported together to the
police station during the early morning of April 7, 2004, but this testimony
was contradicted by Officer Mares=s
trial testimony that standard police procedure would have been to transport
them separately so they could not coordinate their versions of what had
happened.





[3]           Appellant=s brother and mother testified that they saw Traylor hit complainant in
the back with her fist on March 18, 2004.  Appellant=s mother also testified at trial that she once heard
Traylor tell complainant to Astop that mess@ or Traylor would Abeat
[his] ass,@ and that she asked appellant if he was certain he
wanted to marry Traylor.  Appellant=s
former roommate testified at trial that Traylor had a bad reputation in the
community for untruthfulness and for over-disciplining her children.  Appellant=s former fiancé testified at trial that appellant had
cared for her four-year-old daughter without incident during their
relationship.





[4]           Appellant also points to comments from the
trial judge stating that the videotape was irrelevant and argues that exclusion
on these grounds constituted constitutional error.  We do not address this
contention.  Assuming for argument=s
sake that the videotape is relevant under Texas Rule of Evidence 401, the trial
court acted within its discretion to exclude the videotape as hearsay.  See Tex.
R. Evid. 802.