**James McCREARY, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–05–00394–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 16, 2006.

---

8. *Ante,* at 515.

9. *Ibid.*

Lucinda Kay Marshall, Houston, for appellant.

William J. Delmore, III, Asst. Dist. Atty., Houston, for state.

Panel consists of Justices NUCHIA, KEYES, and HANKS.

## OPINION

SAM NUCHIA, Justice.

A jury found appellant, James McCreary, Jr., guilty of aggravated robbery and assessed punishment at 10 years. On appeal, appellant contends that (1) the trial court erred in allowing a detective to testify to certain statements amounting to "backdoor hearsay"; (2) the admission of the backdoor hearsay statements violated the Confrontation Clause of the Sixth Amendment; and (3) the trial court erred in allowing the State to question him about his post-arrest silence. We affirm.

## BACKGROUND

On January 18, 2004, two men walked into a Papa John's pizza restaurant. The older of the two ordered a pizza under the name "Black." He then pulled out a handgun and forced the manager on duty, Jennifer Lee, to go into the back room where the money was kept. The duo followed her into the back room, took the money (about $1,200), and fled. Detective Robert Shoeby questioned Lee and his investigation led him to a local high school where he obtained a photograph of one of the suspects, Troy Brooks. Lee identified Brooks as one of the suspects, and Shoeby's interview with him led Shoeby to appellant. Shoeby then obtained a photograph of appellant and showed it to Lee, who identified appellant as one of the men who had ordered her at gunpoint to retrieve the money.

At trial, the State questioned Shoeby as to how his investigation led him to appellant:

Q: Okay. So, did you to speak to [Troy Brooks] on February 11th of 2004?

A: Yes, ma'am.

Q: At the high school?

A: Yes, ma'am.

Q: Now, after you spoke with Mr. Brooks, did you continue your investigation in searching for the second suspect in this case?

A: Yes, ma'am.

Q: And at that point, who were you looking for?

DEFENSE COUNSEL: Your honor, at this point I'd object to backdoor hearsay.

COURT: Overruled.

A: At this point I was looking for an individual by the name of Black [appellant's nickname].

Appellant also took the stand at trial. He testified on direct examination as follows:

Q: So, after you moved, did—were you ever contacted personally by the police regarding [the aggravated robbery]?

A: No, ma'am.

Q: Okay. Were you contacted by the police regarding any other—let me take that back. Were you contacted by the police regarding a hit-and-run?

A. Yes, ma'am.

* * *

Q: Do you recall—were you asked to go to a police station?

A: Yes, ma'am.

Q: And did you comply with that?

A: Yes, ma'am.

Q: And when you went to the police station, what did they do?

A: Took me in a room and asked me about a hit-and-run on Cypress Station.

Q: Okay. And do you recall the date that you went there?

A: No, ma'am.

Q: Were you able to leave?

A: Yes, ma'am.

Q: Okay. Did they ask you any questions about the aggravated robbery?

A: No, ma'am.

Before the State commenced cross-examination, the prosecutor argued outside the presence of the jury that appellant's testimony had created the misleading impression with the jury that during the police investigation appellant had never been allowed to present his version of the events. The prosecutor stated that after appellant was arrested on March 20, Shoeby had given him an opportunity to talk about the robbery, and appellant stated that he would not talk until he had consulted with an attorney. Appellant objected to any questions about his post-arrest silence. The trial court agreed to let the State ask appellant questions related to appellant's invocation of his right to remain silent. The State then questioned appellant.

Q: Okay. Now you were arrested for this offense on March 20th, right?

A: Yes, ma'am.

Q: And do you remember Detective Shoeby who testified just yesterday, the gentleman with the mustache, blond hair? The officer who testified here yesterday.

A: I think that was one [sic] that took me downstairs and interviewed me.

Q: All I'm asking is do you remember the gentlemen—yeah, who testified yesterday?

A: Not right offhand. I remember who testified yesterday, but I don't remember talking to him. No, ma'am.

Q: Okay. So, you—but do you remember a detective—and would it be Detective Shoeby—who tried to talk to you and give you an opportunity to tell—to tell them what you knew about an aggravated robbery, if anything?

A: Yes, ma'am.

* * *

Q: And you didn't talk to him, did you?

A. No, ma'am.

Q: Okay. So, on the day of your arrest, your story is you know that you were somewhere else on January 18th, 2004—

A: Yes, ma'am.

Q: —right? But you chose not to share that with anybody?

A: Yes, ma'am.

On redirect examination, appellant's trial counsel asked him about the conversation with Shoeby. The State then recalled Shoeby to the stand in rebuttal to testify that appellant had declined to talk with him regarding the robbery until he had consulted with a lawyer.

## DISCUSSION

### Backdoor Hearsay

Appellant first contends that the admission of Detective Shoeby's testimony concerning his interview with Troy Brooks constituted backdoor hearsay and, further, violated the Confrontation Clause of the Sixth Amendment. We review a trial court's decision to admit evidence under an abuse of discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex.Crim.App. 2002). We will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Burden v. State*, 55 S.W.3d 608, 615 (Tex.Crim. App.2001).

■ Appellant relies on *Schaffer v. State* and *Head v. State* for the proposition that the questioning of Shoeby constituted backdoor hearsay. That is, the State was attempting to get before the jury the contents of Brooks's statement—that appellant robbed the restaurant with him—via Shoeby's testimony. *Schaffer* held that "where there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirect-

ly." 777 S.W.2d 111, 114 (Tex.Crim.App. 1989) (noting that the phrase "inescapable conclusion is not a talisman ... [but that] the focus of the inquiry should remain whether or not the disputed testimony is being offered to *prove* the out-of-court statement.").

Ten years later, in *Head v. State*, the Court of Criminal Appeals reaffirmed the holding in *Schaffer*, but distinguished it under the facts before them. 4 S.W.3d 258, 262–63 (Tex.Crim.App.1999). In *Head*, the defendant was accused of sexually assaulting the fourteen year-old daughter of his live-in girlfriend. *Id.* at 259. After revealing defendant's behavior to her aunt, the daughter spoke with an investigator from the district attorney's office, Mark Peterson. *Id.* 259–60. At trial, the State called the victim, the victim's aunt, and Peterson to testify, in that order. Peterson testified as follows:

Q: Were the statements [the victim's aunt and the victim's mother] gave consistent with—

DEFENSE COUNSEL: Objection, Your Honor. Calls for hearsay.

THE COURT: Overruled.

Q: Were the statements they gave to you consistent wit h the facts with the facts related to you by [the victim]?

A: Yes

*Id.* at 260.

The *Head* Court held that this exchange did not constitute backdoor hearsay because the testimony did not produce "an 'inescapable conclusion' that the evidence [was] being offered to prove the substance of an out-of-court statement." *Id,* 4 S.W.3d at 262 (quoting *Schaffer*, 777 S.W.2d at 114). Instead, "the disputed testimony revealed only that the three statements related basically the same facts." *Id.*

*Burks v. State,* cited by the *Head* Court, provides a useful discussion of the problem as applied to our present facts. In that case the Court of Criminal Appeals discussed the "area of hearsay law involving inferences drawn from conduct." *Id.* at 261 n. 2. The *Head* Court explained:

> Although the officer does not actually testify as to what he was told by the witness, the officer's subsequent conduct may produce a strong enough inference as to the substance of the statement to present a hearsay problem. The Texas case of *Burks v. State,* 876 S.W.2d 877, 898 (Tex.Crim.App.1994), illustrates this dilemma. There, the officer testified that he spoke to the victim and an eyewitness to the crime. The State then asked: "After talking to [the victim], and please let me remind you not to tell me what if anything [he] told you, did you go searching or looking for a particular description of an individual?" The officer responded in the affirmative, indicating that he began looking for "[a] black male, somewhat smaller build than [the victim], having in his possession a black ski mask or toboggan type." The officer responded in a similar manner when asked about the type of individual he began to look for after interviewing the eye-witness. The inescapable inference from the officer's testimony was that the victim and eye-witness had told him the description that the officer had related to the jury. This Court therefore held that the officer's testimony was inadmissible hearsay.

*Id.* (internal citations omitted). Here, we can see that the Court of Criminal Appeals was clearly worried that the prosecutor's questioning allowed the victim to testify as to a very specific description via the officer's testimony, thereby creating a backdoor hearsay problem. The State argues that *Jones v. State,* 843 S.W.2d 487, 499 (Tex.Crim.App.1992) (overruled on other grounds) and *Dinkins v. State,* 894 S.W.2d 330, 347 (Tex.Crim.App.1995) are dispositive to the resolution of this issue. In *Jones,* the court stated:

> At the guilt/innocence phase of the trial the arresting officer testified that after listening to another detective question Yelena Comalander he began to suspect appellant in this offense, and that he then had an arrest warrant issue for appellant. The State argues that this testimony is not hearsay because it was not introduced for the truth of the matter asserted, but to explain how the officer came to suspect appellant, seek an arrest warrant for him, and then arrest him.

> Because the statement was not offered to prove the truth of the matter asserted, but to show why the officer got an arrest warrant for and arrested appellant it was not objectionable as hearsay.

843 S.W.2d at 499. The *Dinkins* Court reaffirmed *Jones* and held that an appointment book and an application form with the defendant's name in it were admitted to show how the defendant became a suspect, not for the truth of the matter asserted. *Dinkins,* 894 S.W.2d at 347.

We believe the disputed testimony in this case comes closer to *Head, Jones,* and *Dinkins* than *Schaffer* and *Burks.* The major problem in *Schaffer* and *Burks* was that the prosecutor's questioning left the jury with the "inescapable conclusion" that the someone other than the declarant was testifying through the witness on the stand. *See Schaffer,* 777 S.W.2d at 114. This is not the case under our facts. Our facts fit snugly under the exception the Court of Criminal Appeals has created for testimony such as that here: that Shoeby's testimony was offered to show how appellant became a suspect and did not leave the jury with the inescapable conclusion

that Brooks was testifying through Shoeby. *See Jones,* 843 S.W.2d at 499; *Dinkins,* 894 S.W.2d at 347. Therefore, we hold that Shoeby's testimony was admissible to show why his investigation led him to appellant. Accordingly, appellant's first point of error is overruled.

### Confrontation Clause

Appellant's second point of error is that because Brooks "testified" through Shoeby, appellant should have been allowed to question Brooks, and, because he was not, his constitutional right to confront witnesses against him was violated. *See* U.S. CONST. amend. VI. However, this point of error necessarily assumes a positive (for appellant) resolution of the backdoor hearsay issue. That is to say, to find a Confrontation Clause violation occasioned by appellant's inability to question Brooks, we would first have to find a hearsay problem with Shoeby's testimony. We do not. Therefore, appellant's second point of error is rendered moot and is overruled.

### Post–Arrest Silence

Appellant's final point of error is that the trial court erred in allowing the State to question him regarding his post-arrest silence. The United States Supreme Court has held that the Fourteenth Amendment's Due Process Clause is violated when a defendant's post-arrest silence, at the time of the arrest and after being given *Miranda* warnings, is used by the State for purposes of impeachment. *Doyle v. Ohio,* 426 U.S. 610, 618–620, 96 S.Ct. 2240, 2245–46, 49 L.Ed.2d 91 (1976).

The State argues that the exception to the general rule delineated above applies here: that appellant developed a position during his direct examination that was actually inconsistent with circumstances surrounding his questioning by police, thereby making impeachment of appellant permissible. *See Sanchez v. State,* 707 S.W.2d 575, 582 (Tex.Crim.App.1986) (holding that "[a]bsent a showing of actual inconsistency, post-arrest silence is not probative as evidence of prior inconsistent conduct; therefore, impeachment through the use of such evidence is improper."); *Turner v. State,* 719 S.W.2d 190, 193 (Tex.Crim.App. 1986) (holding that post-arrest silence cannot be considered inconsistent with defensive matters at trial absent a showing of actual inconsistency).

The State offers *Lum v. State* as an example of when the exception applies; there, the defendant took the stand and testified on direct examination that none of the investigating police officers had "let him tell his side of the story." 903 S.W.2d 365, 369 (Tex.App.-Texarkana 1995, pet. ref'd). Therefore, according to the State's analysis, this is analogous to appellant's statement that the "officers never contacted him about aggravated robbery" because this gave the jury the impression appellant never got to tell his side of the story.

We agree. Here, appellant's testimony that the police contacted him but did not ask him about the robbery could have created the false impression that the police prevented him from telling his side of the story. Thus, testimony that he was, in fact, given the opportunity to tell his side of the story was admissible to correct the misleading impression. *See Lum,* 903 S.W.2d at 369.

### CONCLUSION

We affirm the judgment of the trial court.