# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00347-CR

**Kevin Denmon, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY
NO. C-1-CR-12-500120, HONORABLE ELISABETH ASHLEA EARLE, JUDGE PRESIDING**

---

## MEMORANDUM OPINION

A jury found appellant Kevin Denmon guilty of indecent exposure. *See* Tex. Penal Code § 21.08. The trial court sentenced Denmon to 120 days' confinement in the Travis County Jail. On appeal, Denmon asserts that (1) the trial court erred in admitting testimony that Denmon had been investigated for similar conduct in the past and (2) the evidence is insufficient to prove that he was the person who committed the alleged offense. We affirm the trial court's judgment.

## BACKGROUND

On the day of the alleged offense, Kenna Kolodetsky, the complaining witness in this case, was washing her car at a self-serve car wash in Austin. When Kolodetsky began vacuuming the inside of her car, she noticed a man leaning on a gray Dodge truck approximately fifteen feet away who was staring at her. Initially, Kolodetsky assumed the man was lost or "needed to use the phone or something," so she did not pay attention to him. However, when she finished vacuuming

her car two or three minutes later, she saw that the man was still staring at her. Kolodetsky tried to make eye contact with him, at which time she realized that the man's erect sexual organ was exposed and he appeared to be masturbating.

Kolodetsky stated that she was both frightened and offended. She pretended not to notice what the man was doing and made a conscious effort to be "aware of [her] surroundings." She recalled that the suspect was an African-American male, in his thirties, taller than six feet, with a "medium to larger build," and short hair. She described his truck as a dark gray "Dodge pickup," probably manufactured after 2000, with an extended cab. Kolodetsky tried to memorize the truck's license-plate number by repeating it in her head, and although she was confident that she "at least knew part of it," she "wasn't sure if she got it all right."

After making these observations, Kolodetsky ran to a nearby hair salon and asked the owner to call the police. Kolodetsky also wrote down the truck's license-plate number, which she stated was either BKO3626 or BKO2636. Kolodetsky admitted that she was not "completely sure" if either of those numbers was correct, but she was certain that the license plate began with the letters BKO. Officers with the Austin Police Department (APD) arrived at the salon within "a couple of minutes," but by that time the suspect had left the scene. The following day, Kolodetsky reviewed several photo arrays shown to her by police to see if she could identify the suspect, but because she had only seen the suspect's profile and not his entire face, she could not positively identify him from the photographs.

Detective Christopher Leleux was assigned to investigate the alleged offense. As Detective Leleux explained, the license-plate number provided by Kolodetsky was that of a 1987

2

Dodge pickup truck registered to a white male living in Colombus, Texas. Given that this vehicle owner and truck did not match Kolodetsky's basic description of the suspect or age of the vehicle, Detective Leleux believed that Kolodetsky may have transposed some of the numbers in the license plate, which Leleux explained was common for eyewitnesses to do. Detective Leleux forwarded Kolodetsky's statements to an APD "crime analyst" to see if the suspect's description, license plate, vehicle description, and alleged conduct were similar to those of any person in APD's database.

The database indicated that a similar license-plate number—BKO6436—belonged to a gray "2004 Dodge Ram quad cab" registered in Austin to appellant Denmon's wife. The database also indicated that Denmon was physically similar—based on his gender, race, age, height, and weight—to the suspect that Kolodetsky described.[1] Finally, the database revealed that APD had investigated Denmon five times "for the same type of offense." Based on this information, Detective Leleux's investigation focused on Denmon.

The day after the alleged offense, Detective Leleux directed Officer Chris Limmer to locate Denmon and the truck registered to his wife. Officer Limmer proceeded to Denmon's address, where he observed Denmon parking the Dodge pickup truck with license-plate number BKO6436. Officer Limmer then followed Denmon as he drove his truck to a nearby self-serve car wash. Officer Limmer later testified that Denmon pulled into a stall next to an unidentified woman who was washing her car. Officer Limmer stated that the woman was wearing "spandex" and "work out clothes," and Limmer observed Denmon stare at the woman while washing only his truck's

---

[1] Denmon did not match Kolodetsky's description precisely, as Kolodetsky stated that the suspect was over six feet tall while Denmon is only 5' 8". Furthermore, Denmon has a "sleeve" tattoo on his right arm and a scar under his left eye, neither of which Kolodetsky could recall on the suspect.

tailgate for several minutes. According to Officer Limmer, Denmon then pulled his truck into the nearby vacuuming station, continued to stare at the woman for several minutes, but never vacuumed his truck. After the woman left, Denmon drove back to his home, where other APD officers arrested him for various traffic violations.

Denmon was brought to APD headquarters, where Detective Leleux interrogated him about Kolodetsky's allegations. Denmon admitted that he was driving his wife's truck on the day of the alleged offense, but stated that at the time of the offense he was at home repairing computers. When Detective Leleux asked Denmon what types of repairs he was performing, Denmon stated that he was actually "multi-tasking," but could not provide any more details about whose computers he was repairing or what he was doing to repair them. Denmon's cell phone records were subpoenaed. These records revealed that approximately twenty minutes before the alleged offense, Denmon placed a call from five miles north of the crime scene. The records also revealed that approximately fifteen minutes after the offense, Denmon placed a call from his home, which was six miles south of the crime scene.

Denmon was charged with indecent exposure. At trial, Kolodetsky, Detective Leleux, and Officer Limmer testified about the alleged offense and resulting investigation as outlined above. Prior to Detective Leleux's testimony, Denmon moved to exclude any statements about APD's previous investigations of Denmon for similar conduct, asserting that such testimony would be hearsay, extraneous-offense evidence, and overly prejudicial. The trial court overruled the motion, but instructed Detective Leleux not to discuss the particular facts of those prior investigations and to limit his response to the reason why Denmon became a suspect for this offense.

4

The jury found Denmon guilty of indecent exposure as alleged in the complaint. The trial court sentenced Denmon to 120 days' confinement in the Travis County Jail. This appeal followed.

## DISCUSSION

Denmon raises two issues on appeal. First, he asserts that the trial court erred in denying his motion to exclude Detective Leleux's testimony about APD's previous investigations of Denmon for similar offenses. Second, Denmon complains that the evidence is insufficient to establish that he was the person who committed the alleged indecent exposure. We will address each appellate issue separately.

**Evidence of prior investigations**

In his first issue on appeal, Denmon argues that the trial court erred in denying his motion to exclude testimony about APD's prior investigations of Denmon. Specifically, Denmon argues that Detective Leleux's testimony concerning APD's prior investigation of "the same type of offense" was inadmissible because (1) it was hearsay, (2) it was extraneous-offense evidence, and (3) it was overly prejudicial. *See* Tex. R. Evid. 403 (excluding evidence where danger of unfair prejudice substantially outweighs probative value), 404(b) (excluding evidence of extraneous bad acts used to prove bad character), 802 (excluding hearsay except as provided by statute or other rule).

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *See Layton*

5

*v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). We will uphold a trial court's ruling if it is supported by the record and is correct under any theory of applicable law. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). Generally, a hearsay statement is not admissible unless the statement falls within a recognized exception to the hearsay rule. *See Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011). "Whether the disputed testimony violates the hearsay prohibition necessarily turns on how strongly the content of the out-of-court statement can be inferred from the context" of the witnesses's testimony. *Head v. State*, 4 S.W.3d 258, 261 n.2 (Tex. Crim. App. 1999) (discussing problem of "back door hearsay" where witness's testimony "may produce a strong enough inference as to the substance of the [out-of-court] statement to present hearsay problem").

In this case, Detective Leleux's testimony concerning APD's prior investigations for the "same type of offense" was not offered to establish that Denmon had been investigated for or committed other instances of indecent exposure. Rather, the testimony was offered to explain the course of Detective Leleux's investigation and how Denmon came to be a suspect. This is an acceptable, non-hearsay purpose for admitting an out-of-court statement. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) (concluding that victim's appointment book indicating that she met with defendant was admissible for non-hearsay purpose of explaining how defendant became suspect); *McCreary v. State*, 194 S.W.3d 517, 521 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Furthermore, the trial court could have reasonably found that Detective Leleux's brief discussion of how Denmon became a suspect did not lead to the "inescapable conclusion" that

6

Denmon had committed indecent exposure in the past. *See McCreary*, 194 S.W.3d at 521 (citing *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989), for standard by which courts determines if testimony is impermissible back-door hearsay). Therefore, we cannot conclude that the trial court abused its discretion in determining that Detective Leleux's testimony was not hearsay.

Similarly, the trial court could have reasonably concluded that Detective Leleux's testimony about APD's prior investigations was not offered to prove Denmon's bad character. "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Tex. R. Evid. 404(b). The purpose of this rule is to prohibit the State from trying a defendant for a collateral offense or for being a criminal generally. *See Williams v. State*, 662 S.W.2d 344, 346 (Tex. Crim. App. 1983); *Booker v. State*, 103 S.W.3d 521, 539 (Tex. App.—Fort Worth 2003, pet. ref'd). In this case, Detective Leleux's testimony about APD's prior investigation was offered to explain why the investigation had focused on Denmon. *See Greene v. State*, 287 S.W.3d 277, 283 (Tex. App.—Eastland 2009, pet. ref'd) (concluding evidence of defendant's prior arrest was admissible to explain course of investigation). Thus, we cannot conclude that the trial court abused its discretion in determining that Detective Leleux's testimony about APD's prior investigations was not character-conformity evidence.

In his final evidentiary complaint, Denmon asserts that the trial court should have excluded Detective Leleux's testimony about the prior investigations as overly prejudicial. Relevant evidence is generally admissible unless its probative value is substantially outweighed by some other concern, such as the danger of unfair prejudice. *See* Tex. R. Evid. 402, 403; *see also Gigliobianco v. State*, 210 S.W.3d 637, 640–41 (Tex. Crim. App. 2006). Rule 403 creates the

presumption of admissibility, excluding relevant evidence only when there is a clear disparity between its probative value and harmful effects. Tex. R. Evid. 403; *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

In this case, Detective Leleux—consistent with the trial court's instruction—stated only that Denmon "had been investigated a number of times by the Austin Police Department for the same type of offense." This brief statement was part of Detective Leleux's explanation of how Denmon became a suspect, and it was not repeated during the remainder of his testimony. Given that Detective Leleux did not give any details about how many times Denmon had been investigated by APD, what the underlying conduct was in those investigations, and what the result of APD's investigations were, the trial court could have reasonably determined that the risk of unfair prejudice was minimal. *Cf. Gigliobianco*, 210 S.W.3d at 641 ("Evidence that consumes an inordinate amount of time to present or answer . . . might tend to confuse or distract the jury from the main issues."). Therefore, we cannot conclude that the trial court abused its discretion in determining that the risk of unfair prejudice by admitting Detective Leleux's testimony did not substantially outweigh its probative value. Denmon's first appellate issue is overruled.

**Sufficiency of the evidence**

In his second appellate issue, Denmon asserts that the evidence is insufficient to support the jury's finding of guilt. Specifically, Denmon notes that there were inconsistencies between his appearance and Kolodetsky's physical description of the suspect. According to Denmon, these discrepancies, coupled with Kolodetsky's inability to identify Denmon as the perpetrator at trial,

demonstrate that there is insufficient evidence to prove that he was the person who committed the offense alleged.

In reviewing the sufficiency of the evidence to support a conviction, we determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). In making this determination, we consider all evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Allen v. State*, 249 S.W.3d 680, 688–89 (Tex. App.—Austin 2008, no pet.). We view this evidence in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778.

Identity may be proven by direct evidence, circumstantial evidence, or even inferences. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (concluding that circumstantial evidence pointed to defendant as perpetrator even though victim misidentified juror as perpetrator at trial). Circumstantial evidence can be as probative of identity as direct evidence, and circumstantial evidence alone can be sufficient to establish identity. *See Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). The absence of an in-court identification is merely a factor for the jury to consider in assessing the weight and credibility of the witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

In this case, there were discrepancies between Kolodetsky's description of the suspect and Denmon, and Kolodetsky could not positively identify Denmon as the perpetrator at trial. *See supra* n.1. However, several aspects of Kolodetsky's description of the suspect matched those of Denmon, including his race, age, build, and hair length. Furthermore, Kolodetsky's description of

9

the make, body type, color, and license-plate number of the suspect's vehicle substantially matched that of a truck that Denmon admitted he was driving on the day of the offense.[2] In addition, Officer Limmer testified without objection that the day after the alleged offense he observed Denmon drive to a self-serve car wash, wash only the back of his truck while staring at an unidentified woman, move his truck to the vacuum station but not vacuum his vehicle, and continue to stare at the woman until she left the car wash. The jury could have reasonably determined that this conduct was suspicious and similar to the conduct Kolodetsky observed during the alleged offense.

Finally, Detective Leleux testified that when he asked Denmon where he was at the time of the alleged offense, Denmon claimed that he was repairing computers in his home. However, when pressed for specifics, Denmon could not explain what repairs he was doing and then told police that he was "multi-tasking." Given that Denmon's cell phone records indicate that he was not at home at the time of the alleged offense, the jury could have reasonably inferred that Denmon's vague and misleading statements to police officers indicated a consciousness of guilt. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (noting that false statements to law enforcement can be evidence of guilt); *see also Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no writ) (internal quotations omitted) (noting that consciousness of guilt is one of strongest types of evidence of guilt).

---

[2] The only discrepancy between Kolodetsky's description of the vehicle and Denmon's truck was that Kolodetsky remembered the license-plate number as either BKO3626 or BKO2636, but Denmon's license plate was BKO6436. However, Kolodetsky admitted that she was only certain about the first three characters of the license plate, and Detective Leleux testified that witnesses often transpose license-plate numbers.

Reviewing this evidence in the light most favorable to the jury's verdict, we conclude that a reasonable factfinder could have found beyond a reasonable doubt that Denmon perpetrated the offense alleged. Therefore the evidence is sufficient to support his conviction. Denmon's second appellate issue is overruled.

## CONCLUSION

Having overruled Denmon's two issues on appeal, we affirm the trial court's judgment of conviction.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton and Field

Affirmed

Filed:   February 27, 2014

Do Not Publish