ACCEPTED
03-15-00076-CR
7191945
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/1/2015 3:25:52 PM
JEFFREY D. KYLE
CLERK

## NO.  03-15-00076-CR

## IN THE COURT OF APPEALS
## FOR THE
## THIRD SUPREME JUDICIAL DISTRICT OF TEXAS
## AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/1/2015 3:25:52 PM
JEFFREY D. KYLE
Clerk

## NO. 13-0933-K26

## IN THE 26th DISTRICT COURT
## OF WILLIAMSON COUNTY, TEXAS

## EVERTON ROXROY BAILEY, JR.,
## APPELLANT

## V.

## STATE OF TEXAS,
## APPELLEE

## APPELLANT'S BRIEF

**ORAL ARGUMENT REQUESTED**

DAL RUGGLES
SBN: 24041834
LAW OFFICE OF DAL R RUGGLES
1103 NUECES ST.
AUSTIN, TEXAS 78701
PH: (512) 477-7991
FAX:(512) 477-3580
DAL@RUGGLESLAW.COM

ATTORNEY FOR APPELLANT
ON APPEAL ONLY

# TABLE OF CONTENTS

**PAGE**

Parties to Trial Court's Final Judgment………………………………………… 3

Index of Authorities……………………………………………………………. 4

Statement of the Nature of the Case……………………………..……........ 5

Statement of of the Point of Error…………………………………………..... 6

Statement of Facts………...……………………………………………….….. 7

Summary of the Argument ……………………………………………….….... 18

Point of Error Number One…………………………………………...………. 19

Prayer for Relief…………………………………………………...………… 26

Certificate of Service………………………………………………………. 27

Certificate of Compliance…………………………………………………... 27

# PARTIES TO TRIAL COURT'S FINAL JUDGMENT

In accordance with Tex.R.App.Proc. 38.1(a), Appellant certifies that the following is a complete list of the parties and their counsel:

(a) the State of Texas represented by:

>   Ms. Sunday Austin – trial attorney
>   State Bar No. 24038774
>   Williamson County District Attorney's Office
>   405 Martin Luther King Drive, Box 1
>   Georgetown, Texas 78626
>
>   Ms. Lauren McLeod – trial attorney
>   State Bar No. 24059584
>   Williamson County District Attorney's Office
>   405 Martin Luther King Drive, Box 1
>   Georgetown, Texas 78626

(b) Mr. Everton Roxroy Bailey, Jr., represented by:

>   Mr. Keith Lauerman – trial attorney
>   State Bar No. 00786044
>   The Law Office of Keith Lauerman
>   107 North Lampasas Street
>   Round Rock, Texas 78701
>
>   Mr. Terrence Marsh – trial attorney
>   State Bar No. 24087978
>   The Law Office of Terrence Marsh
>   1915 South Austin Avenue, Suite 105
>   Georgetown, Texas 78626
>
>   Mr. Dal Ruggles – appellate attorney
>   State Bar No. 24041834
>   The Law Office of Dal R Ruggles
>   1103 Nueces St.
>   Austin, Texas 78701

# INDEX OF AUTHORITIES

**CASES**                                                                  **PAGE**

Burks v. State, 876 S.W.2d 877 (Tex.Crim.App. 1994)..........................................22

Dinkins v. State, 894 S.W.2d 330 (Tex.Crim.App. 1995)......................................23

Head v. State, 4 S.W.3d 258 (Tex.Crim.App. 1999)………………………….......24

Hill v. State, 817 S.W.2d 816, 818 (Tex.App. – Eastland 1991 pet. ref'd)……... 21

Jones v. State, 843 S.W.2d 487 (Tex.Crim.App. 1992)........................................... 23

McCreary v. State, 194 S.W.3d 517 (Tex.App. – Houston 2006, no pet.)…....23, 24

Morin v. State, 960 S.W.2d 132 (Tex.App. – Corpus Christi 1997, no pet.)......... 22

Schaffer v. State, 777 S.W.2d 111 (Tex.CrimApp.1989) ...........................18, 21, 23


**CONSTITUTIONAL PROVISIONS, STATUTES AND RULES**      **PAGE**

Tex.R.App.Proc. 38.1(a)………………………………………….…..................3

Tex.R.Ev. 801(d) ...................................................... …………………………...21

**TO THE HONORABLE JUDGES OF SAID COURT:**

COMES NOW, Everton Roxroy Bailey, Jr., Appellant in this cause, by and through his Attorney, and files this, his brief on original appeal.

## STATEMENT OF THE NATURE OF THE CASE

Appellant was charged by indictment on July 9, 2013 in Cause No. 13-0933-K26. The indictment alleged that Appellant committed the offense of aggravated assault causing serious bodily injury, family violence, with a deadly weapon. (C.R. 17) On January 5, 2015, Appellant entered a plea of not guilty and jury selection occurred. (R.R. IV, pp. 19, 20-228)

On January 7, 2015, after hearing the evidence and the argument from counsel, the jury found Appellant guilty of the offense of aggravated assault family violence with a deadly weapon. (C.R. 219; R.R. VI, p. 173) On January 8, 2015, after hearing the punishment evidence and argument from counsel, the jury assessed Appellant's punishment at thirty-seven years imprisonment. Appellant was sentenced that same day. (C.R. 225; R.R. VII, pp. 232-234) The trial court's certification of Appellant's right to appeal was signed and filed on January 8, 2015 and Appellant's trial attorney filed a motion for new trial on January 14, 2015 (C.R. 226-228) Appellant filed a timely notice of appeal on January 28, 2015. (C.R. 235-236)

# STATEMENT OF THE POINT OF ERROR

## POINT OF ERROR NUMBER ONE

**THE TRIAL COURT ERRED WHEN IT ALLOWED INADMISSIBLE HEARSAY INTO EVIDENCE DURING THE TESTIMONY OF OFFICER STEPHEN SMITH.**

# STATEMENT OF FACTS

Appellant was charged with aggravated assault causing serious bodily injury, family violence, with a deadly weapon. Specifically, the indictment stated that Appellant:

> "intentionally, knowingly, or recklessly caused serious bodily injury to Amanda Mitchell, a member of the defendant's family or household, or person with whom the defendant shared a dating relationship, by pouring hot water on her head or face or shoulder or chest, and used or exhibited a deadly weapon, namely, hot water, " (C.R. 17)

The indictment also provided notice that the hot water used by Appellant was a deadly weapon:

> "And the State further gives notice that the defendant used or exhibited a deadly weapon, namely, hot water, during the commission of a felony offense or during immediate flight therefrom, or was a party to the offense and knew that a deadly weapon would be used or exhibited." (C.R. 17)

First to testify for the State was Michelle Jackson. Ms. Jackson testified that she lived at the Parkwood Terrace Apartments in Georgetown, Texas for eight years. She moved there in April of 2006 and lived in the same unit, apartment number 6104, for the entire time. Ms. Jackson testified that her neighbors across the breezeway in apartment number 6101 appeared to consist of a male, a young lady, and a little boy. Ms. Jackson said she did not know them or their names but saw them coming and going from the apartment. Ms. Jackson described the young woman as white female that was evidently in the military since she wore a military

uniform a lot. Ms. Jackson testified that the man she would see coming and going from the apartment was a black male. Ms. Jackson identified Appellant as being that same person. (R.R. V, pp. 17-24)

Ms. Jackson went on to testify that she would hear arguments coming from the couple's apartment periodically and that she relayed that information to property manager, Kandy Asher. On one occasion, Ms. Jackson described hearing someone in the apartment scream and that she could tell it was a female screaming. Ms. Jackson notified the assistant property manager about what she heard. Ms. Jackson testified that she did not see the woman or Appellant after that. Ms. Jackson said that she did however, see the inside of the couple's apartment later when she accompanied the property manager during a welfare check. Ms. Jackson testified that this was her first time inside the apartment and that it was empty at the time and that the trash had not been taken out. She also testified that there was a hole in the hallway wall of the apartment. (R.R. V, pp. 31-35)

On cross-examination, Ms. Jackson confirmed that she had never had a conversation with Appellant and therefore did not know what his voice sounded like. She also testified that she had no way of identifying any of the voices that she heard arguing in the apartment. Upon re-direct Ms. Jackson stated that she did not see any other men at the apartment. (R.R. V, pp. 37-39)

Next, Ms. Kandy Asher took the witness stand. Ms. Asher testified that she

8

had been employed as property manager of the Parkwood Terrace Apartments for six years. Ms. Asher testified that her duties included keeping a file on every unit and occupant on the property and as such, she was the person that prepared a report regarding lease violations associated with unit 6101. The specific violations mentioned in her report were for excessive noise disturbance and an unauthorized occupant in the home. Ms. Asher confirmed that State's Exhibit No. 2, a notice of a lease violation, and State's Exhibit No. 3, an incident report, were true and accurate copies of those business records and that she was custodian of those records. (R.R. V, pp. 42-56)

Defense counsel objected to the admission of State's Exhibit No. 3 saying that it contained statements that were hearsay. Specifically, the defense objected to a statement within the incident report that identified the fight in apartment 6101 as being between resident Amanda Mitchell and her boyfriend, a tall black male. The court agreed that testimony provided earlier by Michelle Jackson did not identify the voices she heard arguing in the apartment and ordered State's Exhibit No. 3 to be redacted to delete the reference to "boyfriend, tall, black male." State's Exhibit No. 3 was then allowed into evidence with the redaction. (R.R. V, pp. 57-67)

Dr. Peter Richerson, an emergency physician at West Scott & White Health Care in Round Rock, Texas, testified that he was one of the persons who treated Amanda Mitchell when she arrived at the emergency room on May 3, 2013. Dr.

9

Richerson testified that Ms. Mitchell was categorized as a trauma due to the type of injuries she had sustained and that triage notes referred to complaints of burns from scalding water to her face, chest, back, and right arm. Dr. Richerson also testified that Ms. Mitchell refused to allow them to call police and report the incident and that she presented unclear information on how she got burned but alluded to being with a man when another woman threw hot water on both of them. Because Ms.Mitchell's injuries were so severe she was transferred to Brook Army Medical Center in San Antonio, Texas. Upon cross-examination, Dr. Richerson testified that Ms. Mitchell did not ever change her story as to how she was burned. (R.R. V, pp. 98-122)

Next, Mr. Robert Logan Cowart testified for the State. Mr. Cowart testified that he was employed with the Texas Army National Guard and worked full time with the Counterdrug Task Force. He said he knew Amanda Mitchell because she was a temporary hire of that Task Force. After learning of Ms. Mitchell's injuries, Mr. Cowart testified that he went to see her at the Brook Army Medical Center. He went on to testify that he directed his personnel to take Ms. Mitchell to the Round Rock Police Department because he felt her injuries may have involved family violence. When questioned by the defense, Mr. Cowart confirmed that although he went to see her at Brook Army Medical Center, he never had an opportunity to talk to Amanda Mitchell in person. The conclusion he made to have

her taken to the police department after being discharged from the hospital was based solely on information provided by persons other than her. (R.R. V, pp. 131-139)

Officer Stephen Brent Smith of the Round Rock Police Department testified that during his work shift on May 14, 2013 he met with Amanda Mitchell in the lobby of the Round Rock Police Department. (R.R. V, pp. 143-149) The State asked Officer Smith what Ms. Mitchell said to him that day, to which, the defense objected. Defense counsel argued that statements provided by Ms. Mitchell to Officer Smith would be hearsay. Counsel for the State rebutted that Ms. Mitchell's statements were being offered as information acted on by Officer Smith. The State argued that the statements were not being offered for the truth of the matter asserted but rather, as a reason for the officer's investigative movements. The court ruled that the statement provided by Ms. Mitchell was contextual background information and overruled Defense counsel's objection. (R.R. V, pp. 149-155)

Officer Smith then testified that Ms. Mitchell told him she had been assaulted on May 3, 2013 at the apartment where she lived. Officer Smith went on to testify that Ms. Mitchell said it was her husband, Appellant Everton Bailey, that had assaulted her. Officer Smith also testified that Ms. Mitchell had visible injuries that matched up with what she was telling him. Officer Smith testified he saw burn marks on Ms. Mitchell's neck and face and that there were a lot of other

injuries covered by white gauze. Again, Officer Smith was asked if the injuries he saw matched up with what Ms. Mitchell told him and again, he testified that they did. (R.R. V, pp. 158-159) Officer Smith testified that he prepared a report based on the information provided during his meeting with Ms. Mitchell and provided that report to the criminal investigation division of the Round Rock Police Department. (R.R. V, p. 161) Officer Smith testified that although he provided Ms. Mitchell with a blank written statement form, Ms. Mitchell did not want to give a written statement at that time. (R.R. V, p. 165)

Detective John Combs with the Round Rock Police Department took the witness stand after Officer Smith. Detective Combs testified that he was assigned to the domestic crimes unit and after Amanda Mitchell met with Officer Smith a report was prepared and he began working on her case. Detective Combs said he met with Ms. Amanda Mitchell on May 21, 2013. At that time Ms. Mitchell provided a written statement. Without providing information about the content of Ms. Mitchell's statement or what was said during her interview, Detective Combs testified that after their meeting he formulated the idea that charges should be filed in her case and that the suspect of the offense was Appellant. Detective Combs testified that he had already obtained an arrest warrant for Appellant prior to his meeting with Amanda Mitchell however. He testified that he believed he obtained the warrant on May 17 and that Appellant was already in custody at the time of his

interview with Ms. Mitchell. (R.R. V, pp. 179-190)

Susan Mitchell, Amanda Mitchell's mother, provided testimony about Amanda's marriage to Appellant and the injuries Amanda sustained as a result of the assault. When Susan Mitchell was asked about things Amanda told her the defense objected saying Amanda's statements were hearsay. The court did not rule on the objection, saying that the State must lay the predicate for any potential exceptions. (R.R. V, pp. 199-206) Susan Mitchell testified that when she spoke to Amanda she was still in the emergency room in Round Rock and was very upset and crying. (R.R. V, pp. 207-210) Susan Mitchell went on to describe Amanda's stay and the treatment she got at Brook Army Medical Center. During this testimony no further objections were made by the defense. (R.R. V, pp. 212-224) Susan Mitchell also testified as to communications with Appellant during Amanda's hospital stay. Susan Mitchell said Appellant never came to see Amanda though he did call and text her. Susan testified that the texts to Amanda were upsetting to Susan and concerned Appellant's wish to maintain custody of their child. Susan testified she did not know if Appellant ever called to check on Amanda's condition. (R.R. V, pp. 230-232)

Amanda Mitchell testified after her mother. Ms. Mitchell testified that she married Appellant on March 11, 2011 and that they had one child together. She went on to testify that around May 3, 2013 they were living in an apartment at

1201 East Old Settlers Boulevard in Round Rock, Texas. Ms. Mitchell testified that she got home from work that day around 12:30 AM and that Appellant was up when she got there. Ms. Mitchell testified that she and Appellant got into an argument and when the fight began to escalate she left the apartment and went to her car. Ms. Mitchell said she decided to go back inside the apartment and when she did she found Appellant still up and demanding that she leave. Ms. Mitchell testified that at some point Appellant told her she could stay if she let him hit her in the face with a large metal spoon. At first, Mitchell agreed to being hit with the spoon but then she changed her mind and decided to go back outside to her car instead. Ms. Mitchell testified that she stayed in her car the rest of the night. She said she drove to a nearby park and slept in her car until daylight. She then drove back to the apartment complex and parked. At some point Appellant came out to the car and told Mitchell to come inside. Appellant told Mitchell that nothing was going to happen and that they needed to start cleaning. While Ms. Mitchell started doing dishes Appellant began to argue with her. Appellant said he did not believe she slept in the car because he had walked to the park looking for her. He told her to go back to whoever's house she had come from. Ms. Mitchell explained she had not gone to anyone's house but Appellant did not believe her and the argument kept escalating. Eventually, Appellant told Mitchell she could stay but that he was going to pour boiling water on her. Ms. Mitchell testified that she ran to the door

but Appellant caught her and dragged her to the closet in their bedroom. While Mitchell was in the bedroom she said Appellant went to the kitchen and boiled some water. He then brought the hot water to the bedroom, told Mitchell to kneel down and began pouring the water on her. Ms. Mitchell screamed and got up. Appellant told her to be quiet and get back down. When Appellant finished pouring the water on Mitchell he went to the bathroom. At that time Ms. Mitchell changed her clothes and drove herself to the emergency room at the Scott & White hospital in Round Rock, Texas. (R.R. VI, pp. 7-37)

Amanda Mitchell testified that when questioned by hospital staff at the emergency room she gave false identifying information. Ms. Mitchell testified she gave the wrong name and social security number because she did not want the police to get involved. She also testified that she told the emergency room staff that the burns happened when she was at some guy's house and his girlfriend came home and threw boiling water on her. After being told she would have to be transferred to San Antonio for further treatment Ms. Mitchell testified that she gave her correct name and social security number. As far as how she got the burns, Ms. Mitchell told the medical staff in San Antonio the same thing she told the staff at Scott & White. At some point however, Ms. Mitchell testified that she decided to change her story and give a statement that it was Appellant who was responsible for her burns. She also testified that she went to the Round Rock Police

Department and gave a recorded statement. When asked why she would make up a story about what happened she replied that she didn't want anyone to know what really happened. (R.R. VI, pp. 39-65)

After hearing testimony from Dr. William Carter explaining the dynamics of domestic violence and testimony from physician's assistant, Michael Chambers, explaining the nature and severity of Amanda Mitchell's injuries, the State and Defense rested. (R.R. VI, pp. 70-115, 117-136, 142)

After both sides rested the jury heard closing arguments then deliberated. After deliberating, the jury announced its verdict. The jury found Appellant guilty of the offense of aggravated assault family violence with a deadly weapon as alleged in the indictment. (R.R. VI, pp. 172-173; C.R. 3-5, 219)

During the punishment phase of the case the jury heard testimony from the victim, Amanda Mitchell, as well as her brother, Ryan Mitchell, and her mother, Susan Mitchell. Ryan and Susan provided testimony about Appellant's behavior within the family, touching on several incidents where Appellant would lose his temper and threaten Amanda's family members. The State also called Demetrice Gonzalez who was Amanda Mitchell's supervisor while she was in the National Guard. Ms. Gonzalez testified to seeing injuries on Amanda such as a black eye on several occasions. (R.R. VII, pp. 9-105)

Defense counsel called Appellant's parents, Everton Bailey Sr. and Marcia

Bailey, to testify on Appellant's behalf. Both parents described Appellant as a normal kid while growing up and always the person who acted as the peacemaker in the house. When asked about their son's conviction they could only say how perplexed they were. (R.R. VII, pp. 111-113) Appellant also took the stand to testify in his own behalf. Appellant testified that he somehow thought his actions were warranted or justified but that now, in hindsight, he realized that they weren't and that he was just caught up in his own selfishness. Appellant testified he was sorry for what he did and that he was ready to face the consequences. (R.R. VII, pp. 138-139)

The jury heard argument and then deliberated. (R.R. VII, pp. 211-228) After deliberating, the jury assessed Appellant's sentence at thirty-seven (37) years confinement in the Correctional Institutions Division of the Texas Department of Criminal Justice. (R.R. VII, p. 232)

## SUMMARY OF THE ARGUMENT

In his first and only point of error, Appellant argues that the trial court erred when it allowed inadmissible hearsay into evidence during the testimony of Officer Stephen Smith. The record reflects that Officer Smith provided testimony about statements made to him during an interview with the victim, Amanda Mitchell. The statement consisted of the victim's detailed allegation that her husband, Appellant, assaulted her and that he did so by pouring boiling water on her. These details amounted to more than just "information received"[1] that would lead to Appellant being a suspect. These details amounted to information being provided to prove the truth of the matter asserted, namely, that Appellant assaulted Amanda Mitchell and used or exhibited a deadly weapon in the process. As such, the statement is inadmissible hearsay and should not have been admitted into evidence.

---

[1] While it is permissible for a testifying officer to say she was acting in response to "information received" the officer should not be permitted to relate hearsay statements in the form of reports or complaints on the grounds that she was entitled to tell the jury the information upon which she acted. *Schaffer v. State* 777. S.W.2d 111, 115 (Tex.Crim.App. 1989)

## POINT OF ERROR NUMBER ONE

## THE TRIAL COURT ERRED WHEN IT ALLOWED INADMISSIBLE HEARSAY INTO EVIDENCE DURING THE TESTIMONY OF OFFICER STEPHEN SMITH.

Appellant incorporates by reference the Statement of Facts set out earlier in this brief. During its case-in-chief, the State called Officer Stephen Smith to the stand. Officer Smith testified that he met with the victim, Amanda Mitchell, and when asked what she said to him during the interview defense counsel objected, saying her statement was inadmissible hearsay and should not be allowed. The State argued that Amanda Mitchel's statement to Officer Smith was not hearsay because it was not being offered for the truth of the matter asserted, rather, it was being offered to show Officer Smith's state of mind and why he came to see Appellant as a suspect. The court listened to the arguments of both counsel and decided to allow Officer Smith to testify regarding Amanda Mitchell's statements to him during their interview.

> MS. McLEOD: The -- I'm not offering it under an exception. I'm offering it not for the truth of the matter --
>
> THE COURT: Arguing that it's not hearsay.
>
> MR. LAUERMAN: Well, it's hearsay if they're going to repeat what the victim told them.
>
> MS. McLEOD: I mean, I'm -- that's not why I'm offering it, though. I'm offering it to show why did this officer then take the steps that he took afterwards.

MR. LAUERMAN: Okay. You can just ask him, What steps did you take afterwards?

MS. McLEOD: But --

MR. LAUERMAN: That's the -- you don't have to get into --

MS. McLEOD: -- he's able to explain why he did what he did.

MS. AUSTIN: He can identify the subject of his investigation.

THE COURT: Right. Without going – are you going to go into the specifics of the nature of the act that she reported to him?

MS. McLEOD:  Well, my plan was just to have him say, generally, she reported that she had boiling water poured on her by her husband. He took that report and where it happened and forwarded it on.

MR. LAUERMAN:  Well, I'm going to hold on to my hearsay objection. I'm certainly not going to withdraw it, so --

THE COURT: I think I can instruct the jury that it's not -- the State is not offering it for the veracity of the declarant but, rather, the process of --

MS. McLEOD: Sure.

MR. LAUERMAN:  So it's the --

THE COURT: -- the officer.

MR. LAUERMAN:  So what he – the information that he acted on was not true. Is that what we're saying?

MS. McLEOD:  Well, that's not the point.  I mean, that's not why I'm offering it.

MR. LAUERMAN:  Well, then why offer it?  Well, I disagree. I think it clearly goes to the truth of the matter asserted.

MS. McLEOD: Well, you -- we're always --

THE COURT: I think it's no different from a DWI investigation that an officer stopped a car because it was reported to them that certain driving occurred. I think it's contextual background information. I'm going to allow it, but keep it very narrow.  (R.R. V, pp. 153-155)

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Tex.R.Crim.Evid. 801(d); see *Schaffer v. State,* 777 S.W.2d 111, 115 (Tex.Crim.App. 1989)  As stated above, the State argued that the disputed testimony was not hearsay because it was not being introduced for the truth of the matter asserted, but to explain how the officer came to suspect Appellant.  Whether a third party statement of this type may be allowed into evidence has been argued extensively in the courts and conditions that allow such evidence to be introduced are very fact specific.  The facts in this case do not support the contention that Amanda Mitchell's statement to Officer Smith was provided to inform the jury how Appellant came to be a suspect.  Instead, the facts show that the statement was provided to show the truth of the matter asserted, that Appellant was guilty of aggravated assault with a deadly weapon.

When an arresting officer's actions are not put into question before the jury, testimony that the officer acted upon "information received" should be sufficient. *Schaffer v. State,* 777 S.W.2d 111, 114-15 (Tex.Crim.App. 1989)  see also *Hill v. State,* 817 S.W.2d 816, 818 (Tex.App. – Eastland 1991, pet. ref'd)  Even when the

issue is how an investigator decides upon a suspect the details of a statement made by a third party that led to the decision would be inadmissible. In *Morin v. State*, 960 S.W.2d 132 (Tex.App.- Corpus Christi 1997, no pet.) the Court of Appeals reversed a murder conviction where the State elicited testimony from a police investigator that a friend of the appellant had informed the investigator that the appellant was involved in the crime. *Id.* at 137-38 The specific issue discussed in *Morin* was how an accomplice named Andy Cespedes became a suspect of investigator Oscar Garza.

> "Even if appellant had made an issue of how Cespedes became a suspect, the method of examination employed by the Stare would still be unacceptable. If, as the State claims, it merely wished to allow investigator Garza to explain how he came to suspect Andy Cespedes, the State could have conducted its examination in a way that would have allowed investigator Garza to mention Oscar Garza's tip regarding Cespedes without any mention of Appellant. The portion of investigator Garza's testimony that Oscar Garza named Mat Morin does not serve to explain how Andy Cespedes became a suspect; that portion of the testimony serves only as proof of the matter asserted, that Mat Morin was involved in the murder." *Id.*

In *Burks v. State*, 876 S.W.2d 877, 898 (Tex.Crim.App. 1994) the appellant asserted that the trial court erred when it admitted evidence of statements made to an investigating officer by the deceased and another witness regarding a description of the person who perpetrated the alleged offense. Specifically, the State asked a Detective if he went looking for a particular description of an individual after talking to a witness. The Detective responded that he began

looking for a black male, small build, approximately 5'6" to 5'7". The Court of Appeals found this testimony to be inadmissible hearsay. "We find that Price's statements regarding the fact that he spoke with the victim, Contreras, and the witness, Macias, and then issued a description of an individual, were inadmissible hearsay. As in *Schaffer v. State*, 777 S.W.2d 111 (Tex.Crim.App. 1989), the State indirectly elicited hearsay testimony from Price when it asked him what particular description of an individual he went looking for after questioning Victor Macias and Jesse Contreras. *Id.* at 114 We hold the trial court improperly allowed the State to introduce hearsay testimony before the jury. *Id*."

Appellant acknowledges there is case law where hearsay statements have been found to be admissible in similar situations. These cases however, are distinguishable from the present case and therefore should not be controlling. In *McCreary v. State*, 194 S.W.3d 517, 521 (Tex.App. – Houston 2006, no pet.) the State argued that testimony was not hearsay because it was not introduced for the truth of the matter asserted and relied on *Jones v. State*, 843 S.W.2d 487, 499 (Tex.Crim.App. 1992) and *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex.Crim.App. 1995) as being dispositive to the resolution of the issue. In all three of these cases the court ruled that the disputed testimony was not hearsay and was therefore admissible. As stated above, these cases however, are distinguishable from the present case.

In *McCreary* the disputed testimony involved a detective's statement that information provided by the first suspect in a case led the detective to look for a second person with the nickname of "Black" which turned out to be Appellant. In *Dinkins* Detective testified that the appellant became a suspect based upon names found in an appointment book and application. In *Jones* the arresting officer testified that he began to suspect Appellant of the offense after hearing another Detective question a witness.

Also discussed in *McCreary* was *Head v. State*, 4 S.W.3d 258, 262-63 (Tex.Crim.App. 1999) In *Head*, the disputed testimony revealed only that three statements provided to an investigator related basically the same facts. The substance of what those facts were was not revealed. In addition, there was no evidence provided as to what the contents of those statements were, what facts the statements had in common, or how any of the facts were consistent.

All of these cases where the disputed testimony was allowed are distinguishable in that all involve statements whose facts were described as merely reasons for the appellant to be investigated as a suspect. Hearing another officer question a witness, following the lead of a nickname, names seen in an address book, or confirmation that several statements are consistent with each other, do not equate to a statement describing in detail who committed a crime and how. The hearsay statement in the present case was much more than "information received"

that would have led the officer to believe there was probable cause to suspect Appellant of a crime. The statement in the present case spoke to the ultimate issue of whether or not Appellant was guilty of the charge of aggravated assault with a deadly weapon and therefore offered to prove the truth of the matter asserted and was inadmissible hearsay.

While statements of a third party may be introduced into evidence to show why a person came to be considered a suspect in a case, those statements may only be allowed under limited circumstances. A statement is inadmissible if it provides details and facts that go beyond the basic information leading to a suspect and instead is offered to prove the truth of the matter asserted. In the present case the disputed statement consisted of the victim's allegations to Officer Smith that her husband was the person that assaulted her. Her statement not only named Appellant as the perpetrator, it described the manner in which he committed the assault as evidenced by the "back door" hearsay statement of Officer Smith that Ms. Mitchell's burn injuries were consistent with how she described the assault. Because the disputed statement specifically named Appellant as the perpetrator and described the manner in which he committed the assault, the statement went well beyond "information received" and was presented not to show why Appellant became a suspect but to prove the truth of the matter asserted, that Appellant committed the crime of aggravated assault with a deadly weapon. As such, the

disputed testimony should not have been admitted into evidence. This point of error should be sustained.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Appellant respectfully prays that this Honorable Court sustain his point of error, reverse the trial court and remand the case for a new trial.

Respectfully submitted,

/s/ Dal Ruggles
Dal Ruggles
Attorney at Law
1103 Nueces St.
Austin, Texas 78701
Telephone:  (512) 477-7991
Facsimile:  (512) 477-3580
SBN:  24041834

**ATTORNEY FOR APPELLANT**
**EVERTON ROXROY BAILEY, JR.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Appellant's Brief on Original Appeal was delivered, via e-file, to the Williamson County District Attorney's Office on this the 1st day of October, 2015.

/s/ Dal Ruggles
Dal Ruggles

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief contains 5,442 words, as calculated by the word count function on my computer.

/s/ Dal Ruggles
Dal Ruggles